**VERN REYNOLDS CONSTRUCTION, INC., petitioner, Respondent,**

v.

**CITY OF CHAMPLIN, Appellant.**

No. C7–95–1196.

Court of Appeals of Minnesota.

Nov. 7, 1995.

Review Denied Dec. 20, 1995.

S. Todd Rapp, S. Todd Rapp, P.A., Bloomington, for respondent.

George C. Hoff, Hoff, Barry & Kuderer, P.A., Eden Prairie, for appellant.

Considered and decided by HUSPENI, P.J., and DAVIES and THOREEN, JJ.*

## OPINION

HUSPENI, Judge.

On appeal from summary judgment and judgment of mandamus compelling eminent domain proceedings, appellant City of Champlin argues that respondent real estate developer lacked standing to sue for inverse condemnation because respondent did not own the land when the taking occurred. We conclude that on the facts of this case, ownership of the land when the taking occurred is not a dispositive factor, and we affirm.

## FACTS

Respondent Vern Reynolds Construction, Inc. (Reynolds) purchased parcels of land in 1988 and 1993 as part of a residential development plan in Champlin, Minnesota. In 1967, appellant City of Champlin (Champlin) had constructed a 24–inch water main that ran under the easterly part of the land purchased by Reynolds. The record also reflects that, sometime in 1979 or 1980, Champlin had constructed a lift station and water pumping facility to pump water away from a newly developed shopping center through an 18–inch reinforced concrete pipe under U.S. Highway 169 and onto the westerly part of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the land purchased by Reynolds. It is undisputed that Champlin never commenced eminent domain proceedings. The record does not reflect whether the former landowner was compensated for either the underground easement or the drainage easement running across the land.

Two feasibility reports, published in 1988 and 1989, indicate that the lift station "was intended as an interim facility until such time as gravity trunk storm sewer could be installed" and the natural drainage of the Champlin Plaza Shopping Center could be restored to its northerly flow to the Mississippi River. The 1989 feasibility report also notes that "[t]he adopted storm water drainage plan for the area west of T.H. 169 includes upgrading this pumping station and constructing a forcemain to the Mill Pond * * * [to] eliminate flow from the area west of T.H. 169 in the future * * *." Neither party disputes that Champlin at some point in 1994 abandoned its plans to reroute the storm water to Mill Pond and decided instead to permanently divert storm water onto Reynolds's land.

This action arose when Champlin refused to initiate eminent domain proceedings to obtain, inter alia, a permanent water drainage easement. The district court concluded that Reynolds had standing to pursue an inverse condemnation claim pertaining to the permanent storm water drainage easement and granted the writ of mandamus.[1] The court also awarded Reynolds attorney fees and costs under Minn.Stat. § 117.045 (1994).

Champlin appeals, claiming that the district court erred by finding that as a matter of law, Reynolds had standing to pursue a condemnation award because Reynolds was not the landowner when the taking originally occurred in 1979. Reynolds requests attorney fees on appeal pursuant to Minn.Stat. § 117.045.

## ISSUES

1. Does a lack of notice that a taking has previously occurred provide a subsequent landowner with standing to pursue an inverse condemnation claim upon showing that the former owner was not compensated?

2. If a statute confers attorney fees on a prevailing party in a district court proceeding, is that party necessarily entitled to additional attorney fees upon a successful appeal?

## ANALYSIS

### Standard of review

On appeal from the grant of summary judgment, a reviewing court must determine whether there are any issues of material fact and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosp. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The appellate court must view "the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The parties agree that the sole issue on appeal is whether Reynolds has standing to bring an action against Champlin for inverse condemnation. Our focus, therefore, is solely upon that narrow issue.

While a government may appropriate private land for public use, the Minnesota Constitution requires that the government pay just compensation to the landowner for actions that take, destroy, or damage private property. Minn. Const. art. I, § 13. A cause of action for inverse condemnation arises when a government entity has appropriated the land without attempting "formal exercise of the power of eminent domain." *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 477, 216 N.W.2d 651, 657 (1974). Thus, the "taking" precedes the formal condemnation proceeding upon which payment is made. *Brooks Investment Co. v. City of Bloomington*, 305 Minn. 305, 312, 232 N.W.2d 911, 916 (1975).

Mandamus is the proper vehicle to assert a claim for inverse condemnation.

---

1. In district court, Reynolds argued that two takings had occurred: one involving the underground water main and the other involving the drainage easement at issue in this appeal. The district court held that Reynolds did not have standing to pursue a claim for condemnation proceeds for the underground water main because Reynolds knew about this "easement" when it purchased the land. Reynolds does not challenge this determination on appeal.

*Stenger v. State,* 449 N.W.2d 483, 484 (Minn. App.1989), *review denied* (Minn. Feb. 28, 1990). A writ of mandamus is an extraordinary remedy and should only issue upon a showing that a party has suffered harm that is "direct, substantial, and peculiar * * * in that it differs markedly from the damage suffered by the public at large." *Alevizos,* 298 Minn. at 485, 216 N.W.2d at 661; *see also Coyle v. City of Delano,* 526 N.W.2d 205, 207 (Minn.App.1995) ("Mandamus is an extraordinary legal remedy awarded, not as a matter of right, but in the exercise of sound judicial discretion and upon equitable principles.") An appellate court should reverse a district court's grant of mandamus only upon concluding that "there is no evidence reasonably tending to sustain the [district] court's findings." *Id.*

## I. Standing to pursue inverse condemnation

 An individual has standing to maintain a suit by showing an "injury to some interest, economic or otherwise, which differs from injury to the interests of other citizens generally." *Channel 10, Inc. v. Independent Sch. Dist. No. 709,* 298 Minn. 306, 313, 215 N.W.2d 814, 820 (1974). The landowner seeking a writ of mandamus to compel inverse condemnation has the burden to prove that an unconstitutional taking has occurred or that there has been a "substantial invasion of property rights which results in a definite and measurable diminution of the market value * * *." *Stenger,* 449 N.W.2d at 484–85.

Champlin does not dispute that someone could have been entitled to compensation for the drainage easement but argues that the taking occurred in 1979–80 when it began diverting storm water across the subject land and that only the party who owned the land at the time of the taking is entitled to condemnation proceeds. Because Reynolds did not own the land in 1979–80, Champlin argues that Reynolds cannot be granted standing to pursue this inverse condemnation action. For support, Champlin relies on *Brooks.* We disagree with Champlin and find *Brooks* distinguishable.

In *Brooks,* the City of Bloomington, without acquiring an easement, appropriated a 30-foot section of land owned by the Berglunds to build a segment of Aldrich Avenue South. After the city began laying sewer and water lines, the Berglunds entered into an agreement to sell their land to Brooks for $24,000 plus $2,000 for development plans. That agreement eventually fell through. *Id.* at 306, 232 N.W.2d at 913. Bloomington completed construction of Aldrich Avenue that fall. After the street was completed, the Berglunds again negotiated a sale with Brooks for a total of $20,000. About a year later, the Berglunds filed a petition for mandamus to compel Bloomington to pay compensation for the land appropriated for street construction. *Id.* at 308, 232 N.W.2d at 914.

Bloomington paid the Berglunds $8,700 notwithstanding the fact that Brooks had been the record owner of the land for more than one year. Brooks sued the city upon learning of the payment to the Berglunds, but the court held that the Berglunds were entitled to the condemnation award because they were the owners when the taking occurred and "did not transfer the right to compensation for the portion * * * lost without a separate assignment of such right." *Brooks,* 305 Minn. at 315, 232 N.W.2d at 918.

Champlin interprets *Brooks* as holding that *only* the owner of land at the time of the taking has standing to pursue an inverse condemnation claim. We cannot view the *Brooks* rule narrowly or inflexibly as Champlin does. Rather, we agree with the district court's reasoning that notice of the taking is a critical factor in determining whether a party has standing to pursue a condemnation claim.

Comparing the *Brooks* facts to those present in this appeal, the district court noted that the taking in *Brooks* was open and obvious to the purchaser but that Champlin's "taking" was hidden and "unobvious." The court held that notice of the servitude was essential to determining entitlement to condemnation proceeds. *See Levine v. Twin City Red Barn No. 2, Inc.,* 296 Minn. 260, 263, 207 N.W.2d 739, 742 (1973) (if the burden upon the land is "open and visible and apparent on ordinary inspection of the prem-

ises, [then] the purchaser takes title with the servitude upon it.") Because Reynolds could not "be held to be on notice that Champlin was pumping water onto the property from across Trunk Highway 169 merely by the existence of standing water," the district court found that Reynolds had standing to sue for inverse condemnation.

At least one appellate court in another jurisdiction has agreed with the district court and engrafted a "notice" provision on the *Brooks* rationale. The Colorado Court of Appeals allowed subsequent owners to recover the value of an easement that existed prior to their purchase of the land. *Upper Eagle Valley Sanitation Dist. v. Carnie,* 634 P.2d 1008, 1009–10 (Colo.Ct.App.1981). The court noted that

> there was no showing that [landowners] or their predecessors in title knew of the construction of the line outside the easement area prior to [their] acquisition of the property, and thus, there was no showing that [city] acquired an easement by acquiescence prior to [landowners'] acquisition of the property. Prior to this proceeding, [city] was a trespasser who had only the right to acquire the easement by condemnation. Consequently, [landowners], owners of the property at the time of this proceeding, are entitled to the market value of the easement acquired from them by [city].
>
> If [landowners] are not entitled to compensation, then they would suffer a loss and [city] would receive a windfall since presumably [landowners] paid their predecessors in title for the full unburdened property interest.

*Id.* (citing *Brooks Investment Co. v. City of Bloomington,* 305 Minn. 305, 232 N.W.2d 911 (1975)).

■ The facts in *Brooks* are also distinguishable from the facts in the present case. Significantly, *Brooks* bestowed standing on the original owner and denied standing to the subsequent owner because (1) doing otherwise would provide a windfall to the subsequent owner; (2) the original owner received a lower purchase price than the original sale price ($20,000 as opposed to $24,000), a fact that reasonably reflected the property rights that were lost by the original owner; and (3) there was no specific grant of condemnation proceeds in the conveyance deed. *Brooks,* 305 Minn. at 314–21, 232 N.W.2d at 917–20. Here, there is no indication that Reynolds purchased the land at a discount or that the former owners were compensated by Champlin for the drainage easement.

■ We acknowledge also that "[t]he constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness, * * * as it does from technical concepts of property law." *United States v. Fuller,* 409 U.S. 488, 490, 93 S.Ct. 801, 803, 35 L.Ed.2d 16 (1973). Underlying *Brooks's* holding is the principle that a subsequent owner is not entitled to a windfall. Accepting Champlin's argument that only the former owners are entitled to condemnation proceeds almost certainly would result in a windfall to Champlin.[2] The district court did not err by finding that Reynolds had standing to pursue an inverse condemnation action against Champlin.

■ Finally, even if Reynolds knew that Champlin was pumping water onto its land in 1993, the nature of Champlin's use and of Reynolds's expectations for the land changed when Champlin decided to pump water onto the land on a permanent rather than a temporary basis.[3] While our decision does not rely on the distinction between temporary and permanent use, we note that the Minnesota Supreme Court has discussed the difference between permanent takings and occasional floodings with regard to compensation.

---

**2.** If we accept Champlin's argument that the taking occurred in 1979, then the statute of limitations would have run in 1994. Minn.Stat. § 541.02 (1994) (statute of limitations runs 15 years from the date the actual taking occurred). An inverse condemnation action brought by the former owners would be subject to a statute of limitations defense raised by Champlin.

**3.** The record does not reflect whether the city took any official action to change from a temporary to a permanent use of the land. Both parties, however, premise their arguments to this court on the fact that such a decision occurred.

*Spaeth v. City of Plymouth,* 344 N.W.2d 815 (Minn.1984). In *Spaeth,* the court stated:

Whether occasional flooding is of such frequency, regularity, and permanency to constitute a *taking* and not merely a temporary invasion for which the landowner should be left only to a possible recovery of damages is a question of degree * * *.

*Id.* at 822 (quoting *Nelson v. Wilson,* 239 Minn. 164, 172, 58 N.W.2d 330, 335 (1953)). The court continued: "Permanent in this context refers to a 'servitude of indefinite duration,' even if intermittent." *Id.* (quoting *Wilfong v. United States,* 202 Ct.Cl. 616, 480 F.2d 1326, 1329 (1973)). Given the weight of evidence showing that all of the parties viewed the drainage easement as temporary, it is reasonable to conclude that the landowner (during the city's interim use) had a claim in tort, e.g., nuisance and/or trespass, rather than a claim for an unconstitutional taking. An argument could be made that the unlawful taking actually occurred in June 1994 when Champlin changed its use from a trespass/nuisance into a permanent drainage easement. Under this analysis, standing would not be an issue because Reynolds owned the land in June 1994.

## II. Attorney fees on appeal

 Absent a specific delegation, an appellate court is the proper court to determine the propriety of an award of attorney fees on appeal. *Hughes v. Sinclair Mktg., Inc.,* 389 N.W.2d 194, 200 (Minn.1986). Reynolds requests fees on appeal pursuant to Minn.Stat. § 117.045. This statute provides attorney fees to parties who succeed in compelling a government entity to initiate eminent domain proceedings.

Although the district court properly relied on this statute to provide fees and costs in that court, the statute does not contain a provision for attorney fees on appeal. In *Johnson v. City of Shorewood,* 531 N.W.2d 509, 511 (Minn.App.1995), *review denied* (Minn. July 7, 1995), this court rejected a request for attorney fees on appeal. *Johnson* relied on *City of Minnetonka v. Carlson,* 265 N.W.2d 205, 207 (Minn.1978), where the supreme court refused to broaden the general rule that "attorney fees are not allowed except where authorized by a contract between the parties or by statute * * *."

The *Johnson* court, in construing *Carlson,* refused to award attorney fees on appeal because Minn.Stat. § 117.045 did not specifically provide for appellate fees. The procedure from which this appeal arises is nearly identical to the procedural facts of *Johnson.* We are constrained by *Johnson* and, therefore, deny Reynolds's request for attorney fees on appeal.

## DECISION

The district court properly determined that the subsequent landowner had standing to sue for inverse condemnation. We decline to broaden the statutory reach of Minn.Stat. § 117.045 to award attorney fees to the landowner on appeal.

**Affirmed.**