**Catherine MODROW, Respondent,**

v.

**JP FOODSERVICE, INC.,
Petitioner, Appellant.**

**No. C3–01–900.**

Supreme Court of Minnesota.

Feb. 13, 2003.

---

John W. Polley, Angela M. Crandall, Faegre & Benson LLP, Minneapolis, MN, for Appellant.

Eric J. Braaten, Gena A. Braaten, Nicklaus, Braaten & Hollenhorst, PLLC, Chaska, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Respondent Catherine Modrow commenced this action in June 1995 by serving her complaint for discrimination and sexual harassment on her former employer, appellant JP Foodservice, Inc. More than four years later, she filed the complaint with the Hennepin County District Court. Shortly thereafter, the court issued its scheduling order. After the deadline for discovery established in the order had passed, JP moved to dismiss Modrow's action for failure to prosecute. The court granted JP's motion and dismissed the action, finding that there had been inexcusable delay resulting in severe prejudice to JP. The Minnesota Court of Appeals reversed, holding that the action could not be dismissed for failure to prosecute because it had not been called for trial. We affirm the court of appeals' holding that the district court erred when it dismissed Modrow's action, but do so on other grounds.

In September 1992, Marvin Christen, Vice President of JP, a food service distributor, hired Modrow to work as a selector. As a selector, Modrow was responsible for selecting food packages out of freezer inventory and loading them onto pallets to be delivered to JP's clients. Approximately three months after being hired as a selector, Modrow was transferred to a janitorial position at the same rate of pay. Modrow contends that while employed at JP she was subjected to continuous, management-sanctioned discrimination and sexual harassment. She claims that she complained a number of times to Christen, to someone in human resources, and eventually to JP's President, but that nothing changed as a result of her complaints.

On June 23, 1993, Modrow apparently attempted suicide and was admitted to the Willmar Regional Treatment Center for depression. Modrow maintains that her depression was the result of her hostile work environment and that her doctors advised her not to return to work. JP asserts that Modrow has a history of depression and her hospitalization was simply a part of that history. Patient records indicate that Modrow's illness continued up through the time she filed her action with the court. She has cited her illness during that period of time as a reason for her delay in actively pursuing her claim.

On August 10, 1993, Modrow filed a claim with the Equal Employment Opportunity Commission (EEOC). Almost two years later, on June 8, 1995, the EEOC terminated its investigation into Modrow's claim and issued her a right to sue letter. The EEOC has since destroyed its files on this claim.

The parties agree that in June 1995, Modrow properly served JP with a summons and complaint, and then served an amended complaint the next month. The complaint included allegations of human rights violations, tortious battery, intentional and negligent infliction of emotional distress, wage discrimination, negligence, and negligent termination of insurance coverage. Over four years later, in November 1999, Modrow filed her summons and complaint with the Hennepin County District Court. The record is unclear as

to what discovery Modrow conducted after commencing the action and before filing it with the court. She claims to have issued a request for production of documents, to which she never received a response. To contradict this claim, JP submitted an un-notarized statement in the form of an affidavit from JP's counsel stating that Modrow had initiated no discovery since she began the lawsuit. The district court found that Modrow had conducted no discovery. On the other hand, it is undisputed that in February 1998, JP served Modrow with interrogatories and a request for production of documents. Eleven months later, in January 1999, JP received completed responses to these discovery requests.

On January 11, 2000, Modrow filed an informational statement. Though counsel for JP claimed during oral arguments that it too had filed an informational statement, there is no record of that having happened. On January 25, 2000, the district court issued a scheduling order, with different deadlines than those proposed by Modrow in her informational statement. In its order, the court required that the parties complete discovery and file dispositive motions by June 30, 2000. The court also set the trial date for the first week of October 2000.

After the final discovery date passed without any discovery requests from Modrow, JP filed a motion to dismiss for failure to prosecute. A hearing on the motion was held on August 29, 2000. The district court found that the seven-year delay, dating from the time Modrow filed her EEOC complaint, had "caused extreme prejudice" to JP because eight material witnesses had become unavailable, including Christen who was in the severe stages of Alzheimer's Disease. Further, the court found that Modrow had engaged in no significant discovery during that sev-

en-year period, that her depression predated her employment at JP, and that her assertion that she was advised by her doctors not to pursue her claim constituted inadmissible hearsay. On November 22, 2000, the court dismissed Modrow's claim, finding that (1) JP was prejudiced by Modrow's delay in pursuing her claim, and (2) the delay was unreasonable.

Modrow appealed the dismissal, and the court of appeals reversed and remanded stating, "the district court abused its discretion in dismissing appellant's action for failure to prosecute *without ordering the parties to proceed to trial.*" *Modrow v. JP Foodservice, Inc.,* No. C3–01–900, 2001 WL 1609118, at *2 (Minn.App. Dec.18, 2001) (emphasis added). We affirm the court of appeals, but do so on other grounds.

## I.

 The first issue we must decide is whether the court of appeals applied the appropriate legal standard for evaluating a dismissal for failure to prosecute under Minn. R. Civ. P. 41.02(a). When the lower court's decision to dismiss involves the interpretation of a procedural rule, the appropriate standard of review is de novo. *Jostens, Inc. v. Fed. Mut. Ins. Co.,* 612 N.W.2d 878, 883 (Minn.2000). No deference is given to a lower court on questions of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Therefore, determining whether the court of appeals applied the correct legal standard when deciding whether the district court properly dismissed Modrow's action for failure to prosecute is a question of law which we review de novo.

 Minnesota Rules of Civil Procedure 41.02(a) provides that a district court may "upon its own initiative, or upon motion of a party, and upon such notice as it may

prescribe, dismiss an action or claim for failure to prosecute or to comply with these rules or any order of the court." In determining whether to dismiss Modrow's claim under this rule, the district court applied a two-prong test of prejudice and unreasonable and inexcusable delay. This test can be traced to our decision in *Firoved v. General Motors Corp.*, in which we stated that the "primary factor to be considered" is prejudice, and "the factors of the amount of delay and the reasons therefor must be considered." 277 Minn. 278, 283–84, 152 N.W.2d 364, 368–69 (1967). We later simplified the *Firoved* test into the two-prong version of the test most commonly cited today:

> Before an action should be dismissed for failure to prosecute, it must be shown: (1) that the delay prejudiced the defendant, and (2) that the delay was unreasonable and inexcusable.

*Scherer v. Hanson*, 270 N.W.2d 23, 24 (Minn.1978). Finally, in *Bonhiver*, we made the two-prong test the exclusive method of evaluating dismissals for failure to prosecute, stating such dismissals are "appropriate *only when*" the two *Scherer* elements are met. *Bonhiver v. Fugelso, Porter, Simich and Whiteman, Inc.*, 355 N.W.2d 138, 144 (Minn.1984).

In reversing the district court's dismissal for failure to prosecute, the court of appeals stated that such dismissals are appropriate only after the case has been called for trial. The called-for-trial requirement is derived from *Nyberg v. Cambridge State Bank*, in which we reversed a district court's dismissal with prejudice. 245 Minn. 312, 315–16, 72 N.W.2d 345, 348 (1955). In *Nyberg*, we evaluated the propriety of the dismissal in light of the court's discretion under Minn.Stat. § 546.07 (2002)[1], which describes the or-

der in which issues on the calendar should be heard. *Nyberg*, 245 Minn. at 316, 72 N.W.2d at 347. We concluded that language in section 546.07 "presupposes that a case will be called for trial," so the court has no discretion to dismiss the claim for failure to appear at the call of the calendar because the case has not yet been called for trial. 245 Minn. at 316, 72 N.W.2d at 347–48. We later turned this language into a "general rule" that "a case may not be dismissed for want of prosecution until it has been called for trial." *Breza v. Schmitz*, 305 Minn. 537, 538, 233 N.W.2d 559, 560 (1975). We granted review of this case to determine whether this general rule is appropriate in light of the scheduling procedures enacted in 1991 as part of the General Rules of Practice.

Under the previous Minnesota Rule of Civil Procedure 38.03, a case could be filed with the district court but lay dormant until a party filed a note of issue, at which time the court could schedule the case for trial. Minn. R. Civ. P. 38.03 (1991). This procedure often created a backlog of filed but dormant cases. We attempted to solve this problem by repealing Minn. R. Civ. P. 38.03 and enacting Minnesota General Rule of Practice 111. Under Rule 111, the process of setting a trial date begins automatically upon the filing of an action because the trial date is set in the scheduling order, which must be issued within 60 to 90 days from filing. The implementation of this new scheduling procedure raises the question of whether our general rule that a case must first be called for trial is still by itself dispositive when a court considers a motion to dismiss for failure to prosecute.

▆▆ Dismissing a case for failure to prosecute requires a balancing of two poli-

---

**1.** Minnesota Statutes § 546.07 was amended in 1986 to remove gender specific language.

The 1955 statute is otherwise identical to the 2002 version.

cy concerns that we have recognized in connection with Rule 41.02(a): (1) providing district courts with the discretion to manage their own dockets, and (2) disposing of claims on their merits. *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 425 (Minn.1987) (noting that Rule 41.02 is a trial management tool); *Firoved*, 277 Minn. at 283, 152 N.W.2d at 368 (referring to disposing of cases on the merits as a "primary objective"). The appropriate test for evaluating a Rule 41.02(a) dismissal must address both of these concerns and our two-prong test of prejudice and unreasonable and inexcusable delay does so. However, we conclude that making it a prerequisite that a case be called for trial does not adequately address these policy concerns. Therefore, we conclude that this single factor should no longer be dispositive.

Whether a case has been called for trial is relevant to the inquiry of whether there has been sufficient prejudice and delay to warrant dismissal, but this factor should not be a mandatory prerequisite to dismissal for failure to prosecute. Rather, it should be one of multiple factors to be considered by the court when applying our two-prong test of prejudice and unreasonable and inexcusable delay. Therefore, to the extent that our prior cases established a general rule that calling a case for trial is a mandatory prerequisite to dismissal for failure to prosecute, those cases are overruled. Because the court of appeals' decision is premised on the rule we now abandon, the result reached by that court is in error. Accordingly, we hold that the court of appeals erred when it required that Modrow's case be called for trial before it could be dismissed for failure to prosecute.

## II.

The district court applied the correct legal test for a Rule 41.02(a) dismissal when it evaluated JP's motion in accordance with our two-prong test of prejudice and unreasonable and inexcusable delay. Consequently, the issue we must now decide is whether the district court properly applied this two-prong test. Therefore, we evaluate the district court's use of Rule 41.02 to dismiss Modrow's action under an abuse of discretion standard. *Bonhiver*, 355 N.W.2d at 144.

■ In evaluating the first prong of the test, prejudice, the district court made a number of findings: (1) the seven-year time lapse since Modrow's cause of action accrued made it unlikely that material witnesses would be able to testify accurately; (2) Christen, a central witness who was mentioned numerous times in Modrow's amended complaint, had developed Alzheimer's Disease and would be unable to testify fully; (3) seven other material witnesses were unavailable; and (4) Modrow had conducted no discovery during those seven years to bolster the credibility of any of these potential witnesses. Given these findings, we conclude that the district court did not err when it concluded that JP was prejudiced by the delay between Modrow's serving JP with her complaint in 1995 and Modrow's filing her complaint with the court in 1999. However, a determination that JP was prejudiced does not necessarily end our inquiry. A Rule 41.02 dismissal may be improper, even when there has been prejudice, if the delay causing the prejudice was reasonable or excusable.

■ We have recognized that, under extraordinary circumstances, significant delay can be enough to justify dismissal without a showing of prejudice to the defendant. *Firoved*, 277 Minn. at 283, 152 N.W.2d at 368. In such a situation, the delay may be so substantial that prejudice can be inferred. The reasonableness of any delay, however, cannot be similarly

inferred from the prejudice it may have caused the defendant because even a reasonable delay, which would not be a sufficient ground for a Rule 41.02 dismissal, may prejudice a defendant. Accordingly, to dismiss for failure to prosecute, the district court must make a finding, separate from its finding of prejudice to the defendant, that there was unreasonable and inexcusable delay. Therefore, we now turn to the issue of whether the district court properly concluded that the delay was unreasonable and inexcusable.

■ In finding there was sufficient delay to dismiss Modrow's action, the district court focused on the time period between Modrow's commencement of her action in 1995 and November 1999, when she filed her complaint with the court. The court found that during that period, Modrow did nothing to advance her claim: she made no document requests, served no interrogatories, and took no depositions. As a result of this finding, the court determined the delay was unreasonable and inexcusable. In reaching its conclusion, the court focused largely on delay that occurred before Modrow filed her complaint and exclusively on Modrow's actions. The court did not focus on any actions of JP that may have contributed to that delay.

■ While it is appropriate for a district court to consider prefiling delay caused by the nonmoving party, the court should not consider such delay in isolation. Post-filing activity and any actions on the part of the moving party that may have contributed to the delay should also be considered. Here, the record indicates that once Modrow's complaint was filed in November 1999, there was no unreasonable or inexcusable delay. JP answered the complaint in December 1999, Modrow filed an informational statement in January 2000, and the district court issued a scheduling order later that same month,

well within the 60– to 90–day period required by Rule 111. Additionally, though the court found the prefiling delay to be unreasonable, it appears to have overlooked the attempts Modrow made to move the case forward during that prefiling period. Modrow submitted a detailed demand letter to JP in April 1997. Before submitting this demand, Modrow's attorney notified JP in November 1995, January 1996, and May 1996 of Modrow's medical condition and its effect on her ability to proceed with the case.

■ The court also overlooked that part of the prefiling delay was consented to by JP. The record indicates that JP made two requests to extend the time to answer the complaint. In July 1995, JP requested an indefinite suspension of the 20–day period to file an answer in the hope that the parties could reach an agreement. Modrow revoked the indefinite extension in December 1997. Then in January 1998, after JP hired outside counsel to represent it in this matter, it asked for another short extension. At that time, JP confirmed that Modrow had granted JP "an extension to and including February 15, 1998" to respond to the complaint. JP could have filed its answer and started the process of getting a scheduling order at any time after June 1995 when it was served with Modrow's complaint. Instead, JP appears to have made a tactical decision to wait to see if Modrow would abandon her claim. While a defendant is under no obligation to move the plaintiff's case forward even if delay would ultimately prejudice the defendant, the court should not ignore what role, if any, the defendant played in causing the delay.

■ In deciding to dismiss Modrow's claim, the district court also appears to have relied on her failure to conduct discovery. The court found that from

July 22, 1995, when she served her amended complaint, to November 1999, when she filed her complaint with the court, Modrow "did nothing to advance her claim": she made no document requests, served no interrogatories, and took no depositions. A plaintiff has no obligation to conduct discovery. While failing to conduct discovery may result in a weak case and lead to a dismissal on the merits, there is no affirmative prefiling discovery duty that, when breached, is ground for dismissal for failure to prosecute. Moreover, it is not clear from the record that Modrow failed to conduct any discovery. She claims to have sent a request for production of documents to JP and reference to the request is made in correspondence between the parties' attorneys. While no copy of the request has been provided in the record, the only proof submitted to refute the receipt of this discovery request is an unnotarized statement in the form of an affidavit from one of JP's attorneys. We cannot consider such a statement as evidence.

■ We also note that one of the factors a district court may consider in evaluating the reasonableness of any delay is whether the delay is shorter than the time period the statute of limitations provides for asserting the plaintiff's cause of action.

It is difficult to conclude that a delay is unreasonably long when it is less than the length of time the legislature provides for a plaintiff to commence her cause of action. Though this issue was not addressed by the district court or raised by either party, some of Modrow's claims have a six-year statute of limitations,[2] and may still have been viable in November 1999, when she filed her complaint.[3] It appears inconsistent to dismiss an action because of prefiling delay when the action included claims that may not be time-barred, especially when the dismissal is with prejudice and not on the merits. Such a dismissal is certainly contrary to the "primary objective" of disposing of claims on their merits. *Firoved*, 277 Minn. at 283, 152 N.W.2d at 368.

■ We recognize the broad discretion of the district court in determining whether to dismiss under Rule 41.02; however, such discretion should be tempered by the well-settled tenet that a "[Rule 41.02] dismissal is a severe remedy because it 'operates as an adjudication on the merits.'" *Bonhiver*, 355 N.W.2d at 144 (citation omitted). In recognition of the severity of a Rule 41.02 dismissal and of the policy that strongly favors addressing claims on their merits, we hold that the district court

**2.** One of Modrow's claims, negligence, has a six-year statute of limitations. Minn.Stat. § 541.05, subd. 1(5) (2002). Another of her claims, negligent termination of insurance coverage, also may have a six-year statute of limitations if it is contractual. Minn.Stat. § 541.05, subd. 1(1) (2002).

**3.** It is possible that the EEOC investigation tolled the six-year statute of limitations on Modrow's related state law claims of negligence and negligent termination of an insurance contract and that the statute of limitations would, therefore, not have been expired by November 1999. We have not addressed the issue of whether related state law claims are tolled by pending EEOC investigations and we decline to do so here, but we note that

federal circuit courts are split on this issue. *See, e.g., Horaist v. Doctor's Hosp. Of Opelousas*, 255 F.3d 261, 268–69 (5th Cir.2001) (noting that Louisiana statutes do permit the tolling of state common law claims brought in conjunction with employment discrimination claims investigated by the EEOC); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322–23 (7th Cir.1992) (holding the EEOC investigation did not toll the statute of limitations for plaintiff's state law invasion of privacy claim); *Duran v. Jamaica Hosp.*, 216 F.Supp.2d 63, 67 (E.D.N.Y.2002) (noting that the Second Circuit is split on this issue). Thus, Modrow may have had a colorable argument that the statutes of limitations on her related state law claims had not yet expired.

abused its discretion when it dismissed Modrow's action for failure to prosecute. Therefore, we remand to the district court for further action consistent with this opinion.

Affirmed in part, reversed in part, and remanded.