**C and R STACY, LLC, et al., Respondents,**

v.

**COUNTY OF CHISAGO, Appellant.**

**No. A06–2302.**

Court of Appeals of Minnesota.

Dec. 11, 2007.

Barry L. Blomquist, Barry L. Blomquist Law Office, North Branch, MN, for respondents.

Paul D. Reuvers, Jason J. Kuboushek, Amber S. Lee, Iverson Reuvers, LLC, Bloomington, MN, for appellant.

Daniel J. Greensweig, St. Michael, MN, for amicus curiae Minnesota Association of Townships.

Thomas L. Grundhoefer, St. Paul, MN, for amicus curiae League of Minnesota Cities.

Scott Simmons, St. Paul, MN, for amicus curiae Association of Minnesota Counties.

Considered and decided by DIETZEN, Presiding Judge; HALBROOKS, Judge; and HARTEN, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HALBROOKS, Judge.

This case involves an access to County State Aid Highway 19 (CSAH 19) from respondents' land, Outlot A. Respondents sought to construct a gas station with commercial access to CSAH 19. Prior to construction, appellant County of Chisago (the county) barricaded respondents' commercial access. Respondents filed a claim in district court, alleging that the county had no authority to regulate access to CSAH 19 without a duly enacted enabling ordinance. Respondents further argued that the county's failure to enact an ordinance resulted in a taking of respondents' property and sought inverse-condemnation proceedings.

The county challenges the district court's determinations that (1) the county lacks the ability to regulate CSAH 19 outside of the statutory authority provided in Minn.Stat. § 160.18 (2006); (2) Minn.Stat. § 160.18 is not self-executing and requires adoption of an ordinance to regulate public roads; (3) a regulation of road access pursuant to Minn.Stat. § 160.18 is an "official control" as defined by Minn.Stat. § 394.22 (2006); and (4) as an "official control," appellant's failure to follow public-notice hearing procedures and failure to adopt an ordinance resulted in a taking of respondents' property rights without compensation.

Because the county's police power and the self-executing grant of power from Minn.Stat. § 160.18 give the county the ability to regulate public-road access and because regulation of road access under Minn.Stat. § 160.18 is not an "official control," we conclude that the county has

Minn. Const. art. VI, § 10.

properly regulated access to CSAH 19 and reverse the district court on these issues. But we conclude that whether such regulation is a taking that in this instance requires compensation is a fact question that must be determined by the district court. We therefore remand on that issue only.

## FACTS

### A. The Property

Outlot A is part of the larger Sherman Oaks Plat 3, located in the City of Stacy (the city). Outlot A is bordered by Chisago County State Aid Highway 19/Stacy Trail (CSAH 19), which runs east and west along Outlot A's southern edge. Interstate 35 (I–35) runs north and south along the western edge of Outlot A. Sherman Oaks Road runs east and west, parallel to and north of CSAH 19. Sherman Oaks Road ends at the eastern edge of Outlot A. Both CSAH 19 and Sherman Oaks Road provide access to Outlot A.

### B. History of Outlot A's Driveway Accessing CSAH 19

Outlot A was originally part of a larger farm parcel that was severed when its owners. conveyed a portion of the land to the State of Minnesota for construction of I–35. The deed that conveyed the land to the state also took all right of access to most of the property but stated that the landowner retained a right of access east of I–35. After construction of I–35 began, the driveway onto CSAH 19 provided the only access to the Outlot A portion of the original parcel.

In 1986, respondent AMW, Inc. acquired Outlot A. At the time that AMW purchased Outlot A, the driveway to CSAH 19 provided the only access to Outlot A. AMW agreed with the city in the developer's agreement that Sherman Oaks Road would be constructed as a commercial street and serve as access to Outlot A. The county required that a portion of CSAH 19 be dedicated to the public and otherwise approved the developer's agreement "without comment." AMW and the city agreed orally to have the city place barricades on the west end of Sherman Oaks Road during construction, which eliminated the access to Outlot A from Sherman Oaks Road. The remaining point of access from Outlot A to CSAH 19 was the driveway.

In 1991, Bauerly Brothers, Inc., a construction company, leased use of Outlot A from AMW to fulfill a contract with the Minnesota Department of Transportation (MnDOT) for resurfacing I–35. During this lease, Bauerly Brothers used the driveway access to CSAH 19 to remove fill from Outlot A and for asphalt production on the property. MnDOT also used Outlot A during this resurfacing project as a temporary office and inspection station. In addition, AMW leased space along the west edge of Outlot A to Lamar Companies for two billboard signs visible on I–35. Lamar Companies has since used the driveway onto CSAH 19 to gain access to those signs on Outlot A.

In 1998, AMW sold a portion of the southwest corner of Outlot A to respondent C & R Properties, Ent., Inc. (C & R). This portion of Outlot A was landlocked without access to CSAH 19 via the driveway used by Bauerly Brothers and Lamar Companies. The sale of this portion of Outlot A was conditioned on AMW applying for and receiving a conditional use permit (CUP). The proposed CUP illustrated the driveway access to CSAH 19. The city approved the proposed CUP and issued the CUP on March 18, 1999.

### C. The County Restricts Access to CSAH 19

The county first contacted respondents concerning the driveway access to CSAH

19 in writing in early 1999. Although AMW stated that it had a right of access to CSAH 19, the county advised AMW that it had never approved any driveway access. On February 19, 1999, the county told C & R,

> [D]irect access to [CSAH 19] will not be allowed. The North 91.93 feet (as shown on the plat) is in the State of Minnesota Limited Access Right of Way. The remaining 25.84 feet is not adequate road frontage for a commercial access. Minnesota Department of Transportation Access Dimensions must be followed on any State Aid Highway.

The Department of Public Works also notified respondent Mel Aslakson, as part owner of AMW,

> "Outlot A" has no direct authorized access to [CSAH 19]. The County asks that this unauthorized driveway be removed. Remove culvert (if one exists) and restore ditch to original cross section. Build a berm or provide alternative to prevent future use of this area. We ask that this work be completed with-in 60 days from date of this letter. Failure to comply with-in 60 days will result in the County completing the required work and billing the accrued expense to you.

C & R subsequently submitted a building permit to the city that included language stating that it was "on proposed street off Co. Rd. 19." The city issued a building permit on October 25, 1999. In early November 1999, C & R commenced construction on the project that included a street connecting Outlot A to CSAH 19, as shown in the plans submitted to the city. On November 8, 1999, the county informed respondents that it would commence legal action to prohibit use of the driveway to CSAH 19. When respondents did not stop construction, the county erected barricades on the driveway, prohibiting access to

CSAH 19, but removed the barricades that blocked access via Sherman Oaks Road. Respondents C & R Stacy, LLC; AMW, Inc.; Karl W. Gotfredson and Kelly J. Gotfredson, dba T & C Oil, Inc.; Shari L. Douglas; and C & R Properties Ent., Inc., brought suit in district court in 2004, seeking injunctive relief and damages for unlawful taking without compensation. After a bench trial, the district court concluded that the county unlawfully took respondents' right of access without compensation and awarded damages to respondents. This appeal followed.

## ISSUES

1. Does the county have the authority to regulate access to CSAH 19 absent a statutory grant of power?

2. Does the grant of authority to regulate public-road access in Minn.Stat. § 160.18 (2006) require an ordinance to be adopted?

3. Is regulation of public-road access under Minn.Stat. § 160.18 an "official control" as defined by Minn.Stat. § 394.22–.26 (2006)?

4. Did the county unlawfully take respondents' right of access to CSAH 19 without compensation?

## ANALYSIS

### I.

 The county challenges the district court's determination that it lacks the ability to regulate access to public roads absent the statutory authority contained in Minn.Stat. § 160.18 (2006). The county contends that it has authority to regulate public-road access pursuant to its police power and that Minn.Stat. § 160.18 is a codification of that police power. This court is not bound by and need not give deference to a district court's decision on a

purely legal issue. *Modrow v. JP Food-service, Inc.,* 656 N.W.2d 389, 393 (Minn. 2003). We therefore review the district court's conclusions on police power and statutory construction de novo. *Id.*

■ At the most basic level, the Minnesota Constitution establishes that local-government units possess no inherent powers and are purely creations of the legislature. Minn. Const. art. XII, § 3; *Breza v. City of Minnetrista,* 725 N.W.2d 106, 110 (Minn.2006). Counties, like municipalities, are subject to these same limitations and have only the powers conferred upon them by the legislature. *Altenburg v. Bd. of Supervisors of Pleasant Mound Twp.,* 615 N.W.2d 874, 880 (Minn.App.2000), *review denied* (Minn. Nov. 21, 2000).

■ The state public-highway system is addressed expressly within the Minnesota Constitution. Minn. Const. art. XIV. The constitution mandates construction and maintenance of a public-highway system:

> A county state-aid highway system shall be constructed, improved and maintained by the counties as public highways in the manner provided by law. The system shall include streets in municipalities of less than 5,000 population where necessary to provide an integrated and coordinated highway system and may include similar streets in larger municipalities.

Minn. Const. art. XIV, § 3. In examining how appellant may satisfy this constitutional mandate,

> it should not be overlooked that it is generally accepted that municipalities [and counties] possess extensive and drastic police powers with respect to the care, supervision, and control of streets. The exercise of such powers by municipalities has been upheld and sustained by the courts in a great variety of situations.

*The Alexander Co. v. City of Owatonna,* 222 Minn. 312, 324, 24 N.W.2d 244, 251–52 (1946), *overruled in part on other grounds by Johnson v. City of Plymouth,* 263 N.W.2d 603 (Minn.1978).

■ This police power is the ability of the state and its political subdivisions to impose restraints on private rights that are necessary for the general welfare. *In re 1994 & 1995 Shoreline Improvement Contractor Licenses of Landview Landscaping, Inc.,* 546 N.W.2d 747, 750 (Minn. App.1996) (citing *The Alexander Co.,* 222 Minn. at 322, 24 N.W.2d at 250), *review denied* (Minn. June 11, 1996). Use of police power must be within the legitimate concern of the state and not otherwise reserved to the individual. *State v. Edwards,* 287 Minn. 83, 85, 177 N.W.2d 40, 42 (1970). Furthermore, the method of controlling the private right must be reasonably related to a legitimate government end. *Id.* "Both the state and its municipalities have a wide discretion in resorting to that [police] power for the purpose of preserving public health, safety, and morals, or abating public nuisances." *State v. The Crabtree Co.,* 218 Minn. 36, 40, 15 N.W.2d 98, 100 (1944).

■ Here, the county is attempting to regulate access to CSAH 19 for public-safety purposes. The county denied respondents' access to CSAH 19 because the driveway access lacks adequate road frontage for commercial access as required by MnDOT Access Dimensions that are found in the MnDOT State Aid Manual.[1] One of MnDOT's program goals is to "provide

1. Although the city approved the proposed building permit "on proposed street off Co. Rd. 19," the city on its own lacks the authority to regulate access to a county state-aid highway. *See* Minn.Stat. § 162.02, subd. 1 (2006) (granting counties substantial control over the county state-aid highway system).

users of secondary highways and streets with safe highways and streets." Minnesota Dep't of Transp. State Aid Manual 2007, ch. 1, § III. MnDOT has established uniform state standards for access to public roads, and the county's exercise of its police power conforms to the standards.

The county was exercising its legitimate police power for the purpose of public safety when it required that respondents' driveway access conform to the MnDOT requirements. Public safety is a legitimate concern of state government and its subdivisions, and road-access regulation that prevents overcrowding or traffic congestion is reasonably related to that concern. We therefore conclude that the county's exercise of its police power was valid. Accordingly, because we hold that the county's police power provides it with the authority to regulate CSAH 19, we reverse the district court on this issue.

## II.

The county challenges the district court's determination that because Minn. Stat. § 160.18 is not a self-executing statute, the county must adopt an ordinance in order to regulate access to CSAH 19. The county contends that Minn.Stat. § 160.18 is merely a codification of its police power.

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). "When interpreting a statute, [this court must] first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (citation

omitted). Plain meaning is the governing principle in applying all statutory language and draws from the full text of the act or statutory provision. *Advantage Capital Mgmt. v. City of Northfield*, 664 N.W.2d 421, 425 (Minn.App.2003), *review denied* (Minn. Sept. 24, 2003).

Minn.Stat. § 160.18, subd. 3, states:

Access for particular uses. The owner or occupant of property abutting upon a public highway, having a right of direct private access thereto, may provide such other or additional means of ingress from and egress to the highway as will facilitate the efficient use of the property for a particular lawful purpose, subject to reasonable regulation by and permit from the road authority as is necessary to prevent interference with the construction, maintenance and safe use of the highway and its appurtenances and the public use thereof.

Section 160.18 provides the county with a statutory basis to regulate access to public roads. It also codifies a right of access for abutting land owners and requires "reasonable regulations and permits" if a road authority seeks to limit that right in order to prevent interference with construction, maintenance and the safe use of those public roads. Minn.Stat. § 160.18.

On its face, section 160.18 does not specify procedural requirements other than "reasonable regulations" and "permits" for protection of construction, safety and maintenance. *Id.* The plain language of Minn.Stat. § 160.18 does not include the term "ordinance," nor does it require, on its face, an ordinance to be adopted for road-access regulation to be effective.[2] In contrast, in other statutes, the Minnesota Legislature has explicitly required local

---

**2.** As the county notes, Minn.Stat. §§ 162.01–.181 and 163.01–.17 (2006) provide the authority for the creation of county state-aid highways and county highways. Neither chapters require or mention adoption of an ordinance to regulate these highways.

governments to adopt ordinances to effectively exercise statutory grants of power. *See, e.g.,* Minn.Stat. § 28A.075(b) (2006) ("A local board of health must adopt an ordinance."). If the legislature wanted to require the county to adopt an ordinance prior to regulating access onto public roads, it could have done so explicitly, as it did in other statutes. Based on the plain language of the statute, we conclude that the county is not required to adopt an enabling ordinance to regulate public-road access under section 160.18.

Respondents assert that the MnDOT Road Design Manual expressly suggests that the county adopt ordinances to regulate driveways. The district court made a conclusion of law agreeing with respondents' assertion. But the road design manual only *suggests* that local governments adopt ordinances. The ordinance introduced by respondents is merely a model ordinance. This model can be used by local governments to create and adopt their own ordinance, should they choose to. As the district court noted, the MnDOT Road Design Manual does not contain any legal standards regulating driveways. *See Fisher v. County of Rock,* 596 N.W.2d 646, 654 (Minn.1999) (stating a county was not required to comply with "guidelines" in a manual for selecting traffic barriers).

▮ While the plain language is clear that an ordinance is not necessary for public-road-access regulations here, it does not determine whether section 160.18 is self-executing. We recently examined the issue of whether a statute was self-executing in the context of a city's attempt to enforce a dangerous-dog statute. *In re Molly,* 712 N.W.2d 567 (Minn.App.2006). In *Molly,* this court concluded that Minn. Stat. § 347.50 (2006), which defines the term "dangerous dog," does not "establish a procedure by which a dog may be declared dangerous and is, therefore, not

self-executing as to such a declaration." *Id.* at 569–70. In reaching that conclusion, we quoted a U.S. Supreme Court case stating that a self-executing statute has " 'a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced.' " *Id.* at 570 (quoting *Davis v. Burke,* 179 U.S. 399, 403, 21 S.Ct. 210, 212, 45 L.Ed. 249 (1900)). Provisions which "merely indicate[ ] principles, without laying down rules by means of which those principles may be given the force of law," are not deemed to be self-executing and require other legislative acts to exercise their authority. *Id.* (quotation omitted).

Although respondents argue that Minn. Stat. § 160.18 is not self-executing, the present case is clearly distinguishable from *Molly.* The statute discussed in *Molly* is a definitional statute that contains no procedure to determine whether a dog fits within its definition of "dangerous dog." Minn. Stat. § 347.50. Here, as the county correctly argues, section 160.18 on its face describes the procedural requirements for a proper exercise of a road authority's authority to regulate road access. Minn. Stat § 160.18. Accordingly, we conclude that the district court erred in its conclusion that section 160.18 is not self-executing and reverse on this issue.

## III.

▮ The county argues that the district court erred in concluding that regulation of access to CSAH 19 is an "official control" that requires public-hearing procedures before an ordinance can be adopted. Minn.Stat. §§ 394.22, subd. 6, 394.26 (2006). Because we have already concluded that the county's regulation of access to CSAH 19 does not require adoption of an enabling ordinance, we examine only the district court's conclusion that

regulation under Minn.Stat. § 160.18 is an "official control."

> Minn.Stat. § 394.22, subd. 6, provides: "Official control" means legislatively defined and enacted policies, standards, precise detailed maps, and other criteria, all of which control the physical development of a municipality or a county or any part thereof or any detail thereof, *and are the means of translating into ordinances all or any part of the general objectives of the comprehensive plan.* Such official controls may include but are not limited to ordinances establishing zoning, subdivision controls, site plan rules, sanitary codes, building codes, housing codes and official maps.

(Emphasis added.) According to Minn. Stat. § 394.22, subd. 6, an "official control" is any policy, standard, map or other criteria which is translated *into an ordinance for the purpose of fulfilling the general objectives of a comprehensive plan.* It follows that if a regulation is not for the purpose of fulfilling the general objectives of the comprehensive plan, then it cannot be an "official control" as defined in Minn. Stat. § 394.22. We must examine then, whether the county's regulation of access to a public road implicates the general objectives of a "comprehensive plan."

The term "comprehensive plan" is not used in section 160.18, nor does it appear in chapter 160 or chapter 163, which deal with county roads. Minn.Stat. §§ 160.001–.93, 163.01–.17 (2006). By not including the term "comprehensive plan," we can assume that the legislature intended to omit its application from chapter 160. However, even if the omission creates ambiguity, other statutory language makes it clear that the legislature did not intend for public-road access to be part of a comprehensive plan.

"As a matter of statutory construction, we presume that the legislature uses the same words the same way, even in different statutes." *Stansell v. City of Northfield,* 618 N.W.2d 814, 819 (Minn.App. 2000), *review denied* (Minn. Jan. 26, 2001). "Comprehensive plan" is referred to numerous times in other Minnesota statutes. *See* Minn.Stat. §§ 462.3535 (discussing implementation of community-based comprehensive plans); 138.761 (discussing a need to create a comprehensive plan to protect St. Anthony Falls' historical and architectural resources); 462.111–.398 (discussing housing, redevelopment, planning, and zoning); 394.21–.372 (2006) (discussing county planning, development, and zoning). Instead, chapters 160 and 163, use the term "plan" rather than the term "comprehensive plan." *See generally* Minn.Stat. §§ 160.001–93, 163.01–.17. These chapters do not define the difference between these terms, if any. Accordingly, we must look to the guidance provided by the legislature to interpret any difference in these two terms.

Where the Minnesota Legislature has included general words, preceded by particular words, they are to be construed as restricted in their meaning by the preceding particular word. Minn.Stat. § 645.08(3) (2006). Therefore, we conclude that the particular term "comprehensive" must modify the more general term "plan" and restrict its meaning. As a result, an "official control" as defined in Minn.Stat. § 394.22 must involve only those actions where specifically "comprehensive plans" are involved. Because none of the statutes that authorize appellant to regulate road access reference a "comprehensive plan," but instead reference only the more general term "plan," we conclude that the public-hearing requirements of an "official control" from section 394.22 and section 394.26 do not apply.

### IV.

Finally, the county challenges the district court's conclusion that by restrict-

ing respondents' access to CSAH 19, the county unlawfully took respondents' property right of access without compensation. Whether a taking has occurred is a question of law, which we review de novo. *Thompson v. City of Red Wing,* 455 N.W.2d 512, 516 (Minn.App.1990), *review denied* (Minn. June 26, 1990).

■ The Minnesota Constitution states that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid and secured." Minn. Const. art. I, § 13. In Minnesota, landowners seeking to compel inverse condemnation have the burden to prove that a taking has occurred. *Vern Reynolds Constr., Inc. v. City of Champlin,* 539 N.W.2d 614, 617 (Minn.App.1995), *review denied* (Minn. Dec. 20, 1995).

■ A land owner has a compensable property right of access to an abutting public road. *Cf. Finke v. State,* 521 N.W.2d 371, 375 (Minn.App.1994) (citing *Hendrickson v. State,* 267 Minn. 436, 442, 127 N.W.2d 165, 170–71 (1964) (noting to the contrary that land owners with property that does not abut a street to which they seek access have no compensable right to access)), *review denied* (Minn. Oct. 27, 1994). In Minnesota, compensation is limited to the loss of convenient access. *Id.* at 376. Government regulation of the roadway system that deprives a land owner of "reasonable" or "reasonably convenient and suitable access" constitutes a taking that requires compensation to the land owner. *Johnson v. City of Plymouth,* 263 N.W.2d 603, 605 (Minn.1978). Because respondents own property that abuts a public road, they are entitled to compensation if they have been deprived of reasonable access.

The Minnesota Supreme Court has addressed the confusion that reasonable-access cases have created. *Johnson,* 263 N.W.2d at 606.

[I]f a governmental action has been found not to infringe the right of access, such action has been deemed a "reasonable" assertion of the police power and therefore noncompensable. On the other hand, where courts have determined that official action has eliminated a right of access, the action has been characterized as a constitutional "taking." The result has been the creation of an unfortunate rhetorical device: Reasonable assertions of the police power are not compensable but the "taking" of a reasonable right of access is compensable. There is an obvious difficulty, however, with any attempted application of this statement as a rule of law. The statement itself provides no principled means for distinguishing a due process "taking" from a noncompensable exercise of police powers.

*Id.* (footnotes omitted). The supreme court has stated that

"when the legislative power attempts to forbid the owner from making a use of his property which is not harmful to the public and does not interfere with the rightful use and enjoyment of their own property by others, it invades property rights secured to the owner by both the state and Federal Constitutions. Only such use of property as may produce injurious consequences, or infringe the lawful rights of others, can be prohibited without violating the constitutional provisions that the owner shall not be deprived of his property without due process of law nor without compensation therefor first paid or secured."

*Id.* at 607 (quoting *State ex rel. Lachtman v. Houghton,* 134 Minn. 226, 230, 158 N.W. 1017, 1019 (1916)).

When there is a legitimate exercise of police power that restricts access to a public road and thereby deprives a land owner

of reasonable access, the supreme court has stated that the dissenting opinion in *Alexander Co.*, 222 Minn. 312, 24 N.W.2d 244, is the correct rule of law.

> While it is said that the right of access may be regulated by public authority, that does not mean ... that under the guise of regulation the right may be taken away from the owner. The power to regulate the right of access does not include that of taking it.... If there is to be a denial of plaintiff's right of access, it should be the result of a compensated taking under condemnation and not an uncompensated one under the guise of a police regulation.

*Johnson*, 263 N.W.2d at 608 (quotation omitted).

The Minnesota Supreme Court has determined that when police power is exercised in a way that affects the public road itself (as opposed to access), no compensable loss of a property right occurs. *Hendrickson*, 267 Minn. at 441, 127 N.W.2d at 170.

> Included in this category [of police power] are the establishment of one-way streets and lanes of traffic; median strips prohibiting or limiting crossovers from one lane of traffic to another; restrictions on U-turns, left and right turns, and parking; and regulations governing the weight, size, and speed of vehicles. No compensable damages are sustained by such restrictions and regulations which govern all motorists, including abutting property owners, once they are on the traveled portion of the thoroughfare.

*Id.* These exercises of the police power relate solely to the streets, roads, and highways rather than access to them. *Id.*

█ Here, respondents' land abuts CSAH 19, providing a right of access to the highway, and the county seeks to regulate how respondents can access that public road, rather than regulate the road itself. Because the county's actions affect access and not regulation of the roadway, we conclude that *Hendrickson* and *Johnson* establish that the county has taken respondents' right of access in a manner that requires compensation unless the respondents have other reasonable access onto CSAH 19.

█ Evaluation of the existence of reasonable access is a question of fact and depends on the unique circumstances of each case, including the characteristics of the property itself. *Johnson*, 263 N.W.2d. at 607. "If the [fact-finder] decides that the [regulation] substantially impairs [respondents'] right to reasonably convenient and suitable access," then respondents are entitled to damages. *Hendrickson*, 267 Minn. at 445–46, 127 N.W.2d at 172–73. But the imposition of even substantial inconvenience has been held to not be a denial of the right of reasonable access. *Johnson*, 263 N.W.2d at 607.

█ The record reflects that Sherman Oaks Road connects respondents' property to CSAH 19. The district court found that the Sherman Oaks Road access to CSAH 19 creates a four-block detour as opposed to direct access via the driveway that the county barricaded. But the district court made no finding regarding the reasonableness of that alternate route. Because this is a factual determination, this court is not the appropriate place for its resolution. *Scroggins v. Solchaga*, 552 N.W.2d 248, 253 (Minn.App.1996) (citing *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966)).

Accordingly, we remand to the district court, as the factfinder in this bench trial, for the sole purpose of making findings of fact regarding reasonable access to CSAH 19 from Outlot A. If the Sherman Oaks Road access to CSAH 19 is not reasonable,

a taking has occurred, and respondents are entitled to compensation. *Hendrickson*, 267 Minn. at 446, 127 N.W.2d at 172–73. But if the district court finds that the Sherman Oaks route (or any other route) is reasonable access to CSAH 19, no compensation is due to respondents. *Id.*

If the district court determines that the remaining access is unreasonable, it may consider four factors when evaluating damages: (1) the difference between the market value of the property before and after suitable access has been denied; (2) evidence of lost patronage specifically related to the land itself, but with caution that no damages should be assessed for diversion of traffic, loss of customers, business, goodwill, or profits that are related to intangible variables; (3) the distance to an alternate access point; and (4) the extent to which the alternate route mitigates the damages. *Id.* at 446–47, 127 N.W.2d at 173. The district court has discretion to reopen the record to receive evidence necessary to accommodate the remand.

### V.

Respondents argue that the district court erred in failing to amend its findings of fact to state that appellant has selectively enforced its road-access standards. A district court's denial of a post-trial motion for amended findings will not be disturbed by this court absent an abuse of discretion. *State by Fort Snelling State Park Ass'n v. Minneapolis Park & Recreation Bd.*, 673 N.W.2d 169, 177–78 (Minn. App.2003), *review denied* (Minn. Mar. 16, 2004).

The district court did not explicitly deny respondents' motion, and we cannot assume that the district court erred in not addressing a specific portion of a motion for amended findings. *Luthen v. Luthen*, 596 N.W.2d 278, 283 (Minn.App. 1999) (citing *Loth v. Loth*, 227 Minn. 387,

392, 35 N.W.2d 542, 546 (1949)). To successfully appeal a denial of a motion for amended findings, a party must show that the district court was compelled to make the requested findings and failed to do so. *Fort Snelling*, 673 N.W.2d at 178. There is not a sufficient basis in this record to conclude that the district court failed to make compelled findings.

Respondents are really challenging the credibility of witnesses, which is properly left to the discretion of the district court. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). We will not disturb what is the proper exercise of discretion by the district court.

### DECISION

Because the county regulated road access from Outlot A to CSAH 19 in a proper exercise of its police power and because Minn.Stat. § 160.18 (2006) is a self-executing statute and does not require adoption of an ordinance to be effective, nor is regulation under section 160.18 an "official control" as defined by Minn.Stat. § 394.22 (2006), the district court erred in concluding that the county lacked the authority to do so outside of Minn.Stat. § 160.18, and we reverse on those issues. But because the matter of compensation to respondents under a takings theory is dependent on a determination of whether the Sherman Oaks Road or any other access is reasonable, we remand that issue to the district court for factual findings consistent with this opinion.

**Reversed and remanded.**