STATE, BY MILES LORD, ATTORNEY GENERAL,
v. NORTH STAR CONCRETE COMPANY.

122 N. W. (2d) 118.

June 7, 1963—No. 38,671.

*Smith, McLean, Peterson & Sullivan,* for appellant.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Joseph Perry,* Special Assistant Attorney General, for respondent.

ROGOSHESKE, JUSTICE.

Appeal from an order denying a new trial in a condemnation proceeding wherein the state seeks to acquire lands for relocating a portion of the channel of a navigable river, such relocation being deemed necessary for the construction of a major trunk highway.

The appellant is the owner of a 23-acre tract of land in Blue Earth County located on the Minnesota River immediately south of North Mankato. The north boundary of the tract is the south shoreline of the river. In order to locate Highway No. 256 along the north bank of the river in North Mankato, the commissioner of highways determined to change the channel of the river by moving it southerly upon appellant's lands. For this purpose, the taking of 9.24 acres of its property was deemed necessary. The petition originally alleged that it was necessary to acquire the fee interest in the land but was thereafter amended so as to allege that only an easement over appellant's land was sought. The owner moved to set aside the amended petition, objecting to a taking of less than the fee. After a hearing, its objection was overruled and the change in the petition was allowed to stand. Commissioners appointed by the court awarded the owner $80,000. The state and the owner filed cross-appeals. The jury awarded the owner $19,000 for the land taken and $2,500 as damages to the 13.76 acres remaining. The owner appeals from a denial of its motion for a new trial.

Prior to trial, the owner, by motion for summary judgment, requested the court to declare that the taking, although designated as an easement, amounted to a taking of the fee interest. This motion was denied. Upon trial, the owner, by cross-examination of the state's witness and otherwise, sought to establish that the nature of the state's taking deprived the owner of all practical, beneficial use of the entire 9.24 acres taken, and therefore amounted to a taking in fee. The state resisted this contention, insisting that only an easement was taken with the owner retaining the fee and "the right to use said lands for any purpose not inconsistent with the purposes for which the land is acquired." At the close of the

testimony, and pursuant to the state's request, the court indicated that the jury would be instructed in line with the state's contention. However, the charge to the jury, read as a whole, permitted the jury to determine the nature and extent of the state's taking. It allowed the jury to determine from the evidence what, if any, use the owner could make of the 3.24 acres constituting the relocated bank of the channel, and further advised the jury that the owner could continue to use the 6 acres constituting the new bed of the river in the same manner it had used the old bed of the river prior to the taking, namely, by securing permits from the Minnesota Department of Conservation to mine gravel. The effect of this submission amounted to a denial of both the state's and the owner's contentions.

The area taken is difficult to describe. It is irregular in shape and is comprised of the south riverbank, together with adjacent lowland. The owner had used the land in the operation of its gravel-washing plant which was located generally on the westerly part of the 23-acre tract and immediately south of the specific acreage condemned by the state. There were no improvements or installations on the 9.24 acres except a haul road and a dam. Much of the lowland was covered with trees, brush, and ordinary dumpings. The drainage of silt across this land had resulted in large accumulations of material described as overburden. On a part of the land the overburden had been stripped away and the underlying gravel mined. A sump pond or settling pond was located on the part taken, as well as certain weights or anchors to which cables necessary to some part of the plant operation were attached. There was also a reserve pile of gravel, referred to as a surge pile, which stored mined gravel for processing in the plant during spring when mining operations could not be carried on.

The questions raised on appeal are whether, as urged by the owner, Minn. St. 465.18 renders the state's taking a taking in fee as a matter of law; whether the cost of changes in its gravel-washing plant necessitated by the state's taking is admissible on the issue of damages; and whether the expert opinion given by a witness testifying on behalf of the state, as to the value of gravel deposits in the land taken, was based on an improper foundation.

The legislature has vested the commissioner of highways with authority to exercise the sovereign power of the state to acquire lands for state highways and to determine the necessity and to designate the extent of and the interest in the lands to be taken.[1] The commissioner's determinations with respect to the necessity, as well as the extent of the taking including the interest to be acquired, are subject to a limited review by the courts. As we said in State, by Mondale, v. Ohman, 263 Minn. 115, 119, 116 N. W. (2d) 101, 104:

"* * * the courts may not interfere * * * if his determinations have a reasonable basis and are not arbitrary, capricious, or discriminatory."

In answering the first question, we are concerned with the commissioner's power to limit the interest or estate taken under the facts disclosed. Section 161.20, subd. 2, provides that the commissioner "is authorized to acquire * * * in fee or such lesser estate as he deems necessary," all appropriate lands. This clearly intends that the commissioner exercise an initial judgment as to whether a fee or an easement should be acquired.

By implication, it seems obvious that the commissioner is not authorized to take a greater estate than is needed, nor permitted to take less than what in fact will be used consistent with the purposes for which the land is taken. Since the extent of the estate taken directly affects the amount of the compensation required to be paid, this limitation on his authority finds its most persuasive support in the constitutional guarantee that private property shall not be taken "without just compensation therefor, first paid or secured."[2] If the estate taken is designated as an easement but the facts established that the use thereof will deprive the owner of all practical beneficial use of the servient fee, that constitutional provision would require that the owner be permitted to calculate his damages on the basis that the fee was taken.[3] It is well established that

---

[1] Minn. St. 161.20.

[2] Minn. Const. art. 1, § 13.

[3] While it has been declared that in condemnation proceedings "where only an easement is acquired, the value of the fee remaining is presumptively nominal," (Chicago Great Western R. Co. v. Zahner, 145 Minn. 313, 316, 177

whether proper compensation has been made is a judicial question, the final determination of which rests with the court.[4] Where the taking deprives the owner of all practical beneficial use, requiring compensation to be measured as if a fee were taken is not compelling the commissioner to take the fee but rather is enforcing the constitutional right of the owner to just compensation.[5] In this sense the commissioner's determination to take less than the fee is not binding on either the owner or the court. The final determination of the extent of the taking or of the estate acquired is a question of fact. Where the facts are disputed on the issue of whether any practical beneficial use remains in the owner, a jury issue arises; where there is no dispute, the issue is for the court.

In the present case the litigants appear to have approached the problem with directly opposing theories, although each contended that no jury issue was developed by the evidence. The court held otherwise, but submitted the issue upon a record which we believe permitted the jury to do no more than speculate as to what beneficial use remained in the owner after the taking. With respect to the 6 acres now constituting the bed of the relocated river, the owner is unquestionably deprived of all beneficial use unless it is granted a permit from the state. We fail to find any evidence which would support a finding that the owner could make any practical beneficial use of the bed solely by force of its ownership of the fee. Moreover, as the owner argues, we cannot escape the conclusion that § 465.18 effectively prevents the state from reserving any such rights to the owner.[6] The relocated channel is now an integral part of the Minnesota River, concededly a navigable stream.

---

N. W. 350, 351) a dispute regarding the interest taken may have a significant effect on the value testimony.

[4]State, by Peterson, v. Bentley, 216 Minn. 146, 12 N. W. (2d) 347.

[5]This is analogous to the reasoning in State, by Peterson, v. Bentley, *supra,* where this court affirmed an order of the trial court including lands omitted from the original petition in the proceeding because they were in fact found to be affected by the taking.

[6]Minn. St. 465.18 provides: "The ownership of the beds and the lands under the waters of all rivers in this state which are navigable for commercial purposes are hereby declared to be and shall be in the State of Minnesota in fee simple, subject only to the regulations made by the congress of the

Questions relating to the right to impair navigability or whether the statute could be construed as a limitation on the right to divert a navigable river artificially were not raised or presented. The relocation is an accomplished fact. Certainly it cannot be regarded as resulting in a partial destruction of the navigability of the river.

To conclude that the owner should be permitted to exercise a proprietary right over a part of the bed of a navigable river would directly conflict with the language and purpose of the statute. The statute vests the sovereign right to the beds of navigable rivers in the state in trust for the people of the state. Accordingly, we hold that the ownership of the bed of this river, as artificially relocated, is vested in the state by operation of law. It follows that the court should have held the commissioner's designation unreasonable and arbitrary, and should have instructed the jury that the taking of the bed of the relocated channel, although designated an easement, amounted to a taking of the fee.

Perhaps the record justified submitting to the jury the nature and extent of the taking with respect to the remaining 3.24 acres now constituting the relocated south riverbank. The language of § 465.18 refers only to the bed of the river. However, we can find no satisfactory evidence of what practical beneficial use the state claims the owner can make of this area. Significantly, there is no testimony concerning the high and low watermark. Since there must be a new trial, the issue regarding the extent of the taking of or the interest acquired in the area comprising the bank will be one of fact to be determined upon settled rules.

The remaining questions can be disposed of by the application of settled rules. In a partial taking, whether a fee or an easement is acquired, the rule of damages is identical. The owner is entitled to compensation not only for the part taken but also for damage to the part not taken. This is implicit in the rule given to jurors that they are to measure the damages by the difference in the market value of the entire tract before the taking and the market value of the tract remaining. Any evidence which legitimately bears upon the market value, either before or after the taking, including damage inflicted upon the part remaining,

---

United States with regard to the public navigation and commerce and the lawful use by the public of the waters while thereon."

should be received. Customarily, a value witness, after expressing his opinion, is called upon to relate the elements or factors he considered in support of his opinion of the market value before and after the taking. This testimony is usually essential to enable the jury to test the credibility of an expert witness intelligently.

Due to the taking in this case, the owner believed it necessary to relocate installations on the part not taken in order to restore the operational efficiency of its washing plant. Evidence relating to relocation costs, incurred or to be incurred, was excluded on objection of the state. While it is not clear that this evidence was directly connected with, and offered in support of, the opinions concerning market value, it was error to exclude the testimony. It is material, and certainly relevant, to the question of damage to the part not taken and is admissible on the basis that the owner is required to mitigate his damages. State, by Lord, v. Casey, 263 Minn. 47, 115 N. W. (2d) 749. This evidence falls in the same category as evidence concerning the cost of replacing the haul road, which was admitted and apparently supports the jury award of damages of $2,500 to the part not taken.

We deem it unnecessary to outline our reasons for upholding the court's refusal to exclude the opinion of Mr. Philip Brancheau, a value witness testifying for the state. Our examination of the record satisfies us that the court did not commit error in finding that the opinion he expressed was not based on knowledge acquired during settlement negotiations and that a sufficient foundation was laid.

Reversed and new trial granted.

MR. JUSTICE SHERAN took no part in the consideration or decision of this case.