The CITY OF PRIOR LAKE, Appellant,

v.

Henry R. BALLARD, et al.,
Respondents.

No. C9–85–808.

Court of Appeals of Minnesota.

Oct. 29, 1985.

V. Owen Nelson, Caryn F. Brenner, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for appellant.

Leland J. Frankman, Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

The City of Prior Lake appeals from a judgment based on a jury award of $32,420 to Henry and Janis Ballard for the condemnation of a permanent easement. We affirm.

## FACTS

This appeal arises from the City of Prior Lake's condemnation of a permanent easement in a parcel of land to provide public access to Prior Lake. The parcel is an extension of a public road called West Avenue and leads to both Prior Lake and to Point Beautiful, a privately-owned area. The 4,775-sq. ft. parcel was owned and used as a driveway by Henry and Janis Ballard, owners of lots 8–12 on Point Beautiful, and by the owners of the remaining seventeen lots on Point Beautiful.

The city served a petition for condemnation on the Ballards on February 17, 1983. A full hearing was held and three Commissioners appointed by the district court. The Commissioners initially concluded that the permanent easement would detrimentally affect the Point Beautiful properties unless a barricade were erected to prevent launching of watercraft. The Commissioners proposed the barricade instead of compensation to the landowners. The city was unwilling to agree to the barricade, and upon resubmission the Commissioners found the landowners would sustain no damage. The Ballards appealed the Commissioners' damage award to a jury.

In chambers before and during the trial, the attorneys for the city and the Ballards engaged in discussions with the judge about evidence the city intended to present at trial. At issue was the testimony of three witnesses, which would show that the driveway had been used by the public for access to the lake for a number of years before the date of the taking. The city wanted to use this evidence on the issue of the city's possible prescriptive right to the parcel, as well as on the issue of damages. The Ballards argued that the only issue was damages and the city should be estopped from claiming a prescriptive easement, because it had elected its remedy when it initiated a condemnation proceed-

ing. The trial court determined that the city could not litigate the prescriptive rights issue, and, as a result of that conclusion, ruled that the city could not introduce "evidence as to what uses were made at this property, that might result in such a proprietary interest in the property * * *."

At trial Janis Ballard testified that the taking had adversely affected the value of her property. In particular, she said there was an increase in swimming, camping, boat and vehicular traffic and a loss of privacy. She also said the increased boat traffic produced a gasoline film on the bay. She testified that, in her opinion, the value of the Ballards' property had diminished from $278,000 to $208,000 as a result of the taking.

On cross-examination, Ballard said that "she may have seen some (children swimming), one or two years back." To impeach Ballard the city attorney called Joseph Hullet. Hullet was one of the three individuals whose testimony on the long-standing use of the road was excluded. He resided on Sunfish Bay, two houses away from West Avenue. He testified that there was no gasoline film on the bay and that since the taking there had been no change in the volume of automobile traffic, the manner or frequency of the public's use of the beach for swimming, or the frequency of boat launchings.

Both parties called experts to testify on damages. The expert witness for the Ballards, Edmund Bowles, testified that total damages were $28,720. The expert witness for the city, Frank Wicker, testified that there was no loss in value and, therefore, no damage. Wicker also testified from personal knowledge that since the taking there had been no increase in swimming, boating or launching of boats, oil on the bay, or numbers of people in the area of West Avenue.

Because of the trial court's ruling, the city did not call Stephen Schmidt, a Prior Lake police officer, who would have testified that the driveway had been used by the public for 15 years before the taking; nor did the city call Elmer Bussey, who would have testified on the public use of the road for 50 years.

At the conclusion of the trial, the court instructed the jury that there was no prescriptive right at issue and that when determining a loss in fair market value, the jury must consider "all the facts and circumstances which a buyer * * * would reasonably consider and which would bear on the question of the value of the property." The court did not instruct the jury that Joseph Hullett's testimony was limited to impeachment and consequently it was received by the jury as general evidence.

The jury awarded the Ballards damages of $32,420. According to the special verdict form the jury awarded $920 as compensation for the Ballards' interest in the driveway and the balance for the consequential injury to their property. The city appeals, contending that the trial court erred in disallowing the testimony of two witnesses on the issue of the past use by the public.

## ISSUE

Did the trial court commit reversible error in excluding the testimony of two witnesses on the issue of the past public use of the property?

## ANALYSIS

The City of Prior Lake argues that the trial court erred in refusing to allow evidence of the public's long-standing use of the condemned parcel. This evidence bears on the prescriptive easement theory, which the judge properly determined was not an issue because the city had elected to proceed by condemnation. The city does not dispute this ruling on appeal. However, the city argues that the excluded evidence also bears on the consequential damages to the Ballards' remaining property. *See, e.g., Alevizos v. Metropolitan Airports Commission*, 298 Minn. 471, 487, 216 N.W.2d 651, 662 (1974) ("the measure of recovery is decrease in market value of the property due to its decreased desirability in the general market place * * * ").

■ The general rule is that any evidence legitimately bearing on the market value, either before or after the taking and including damage inflicted on the part remaining, should be received. *State v. North Star Concrete Co.*, 265 Minn. 483, 488–89, 122 N.W.2d 118, 123 (1963); *State v. Gannons Inc.*, 275 Minn. 14, 18, 145 N.W.2d 321, 325–26 (1966). Because the evidence of the public's long-standing use bears on the market value of the Ballards' property before the taking, it should have been received into evidence.

■ The city contends a new trial is required because it was prejudiced by the trial court's exclusion of Stephen Schmidt's and Elmer Bussey's testimony. The jury, however, heard evidence of the public's prior use. Joseph Hullet was allowed to testify, and the jury was not given any instruction that his testimony was limited to impeachment. Furthermore, the city's expert witness, Frank Wicker, also testified that he had observed no changes in use of the area since the taking occurred. Therefore, the jury heard enough of the evidence through these witnesses to render the court's error harmless. *See, e.g., Wenner v. Gulf Oil Corp.*, 264 N.W.2d 374, 380 (Minn.1978).

## DECISION

The trial court incorrectly excluded evidence of the public's long-standing use of the condemned parcel. The court's error, however, was harmless because the jury heard similar testimony through other witnesses.

Affirmed.