Jack H. WHEELER, et al.,
Respondents,

v.

Mary NEWMAN, et al., Appellants.

No. C6–86–713.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Valen & Larson, John E. Valen, Little Falls, for respondents.

Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., John H. Scherer, St. Cloud, for appellants.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Respondents sought a judgment declaring and granting an easement by prescription across an eight-foot driveway located on the property of appellants. Appellants disputed the existence of the easement.

The trial court found that respondents have an easement by prescription over the driveway in question up to the point where the driveway branches off to respondents' property. We affirm.

### FACTS

Appellants and respondents currently own adjacent parcels of property on Lake Alexander. The disputed driveway runs between the parcels, but is totally situated on appellants' land.

Before 1954 Carrie Goodvin and her family owned both lots and the driveway in dispute. They operated a resort on the lake. Consequently, the driveway was used for both access to the resort and the lake generally.

In 1954 Oscar Rossum purchased the lot currently owned by respondents from Goodvin. The lot purchased did not contain the driveway now in dispute. The driveway ran between Goodvin's and Rossum's property, but actually lay on the former's property.

After purchasing the adjacent lot, Rossum began using the disputed driveway to get to his land. Rossum testified at trial that he used the driveway because "everybody used it." Rossum indicated that he never had a conversation with Goodvin concerning the use of the driveway. He testi-

fied that he had never thought of acquiring, and had no intention to acquire, ownership of the driveway. The driveway was maintained by Rossum and two neighbors, James Cherry and Zigfred Nelson. Rossum further testified that he used the driveway continuously up until 1983.

· In 1966 Goodvin sold her remaining parcel to her grandson Walter Smith. Smith testified at trial that in 1966, after he had purchased his grandmother's property, he had a conversation with Rossum. Smith claimed that this conversation took place in the yard in front of Rossum's house. Smith asserted that Rossum asked if he, Rossum, could continue to use the driveway. Smith replied that Rossum could continue to use the driveway, but that he, Smith, still owned it. Rossum testified that he did not recall such a conversation. Rossum further indicated that he thought he would recall the conversation if it had taken place. In 1980 Smith sold the property to appellants.

In 1982 Rossum put his land up for sale and was informed by appellants, then owners of the adjacent parcel, that while he could continue to use the driveway his buyers could not. Rossum then constructed an additional access to his property. He informed respondents of the dispute when he sold them the property in 1983. The disputed driveway has been used by Rossum, appellants and respondents up to the time of trial.

Zigfred Nelson is a neighbor who has lived immediately west of respondents' property since 1960. Nelson testified that the disputed driveway was at one time used as a driveway to the Goodvin playground and to the lake. At that time members of the public used the driveway. He further testified that from 1960 on he, Rossum and Goodvin all used the driveway. Nelson used the driveway and the garage on Rossum's property during winters from 1960 to 1983 when Rossum sold his property. He used this garage with Rossum's permission. Although Goodvin did not own a car, people used the driveway when they came over to get her.

James Cherry lives on the lot directly to the east of Goodvin's house. Cherry testified that after he bought his property in 1958 he used the driveway as the sole access to that property for about two years. After that time he completed his own driveway and stopped regular use of the disputed driveway. Cherry testified that he thought the driveway was a public road because "everybody told me that the road has been there 100 years." He indicated that "everybody seemed to drive in" on the disputed driveway to see the lake. He further indicated that the driveway was used for deliveries in the neighborhood. Finally, Cherry testified that he had used the driveway to get heavy equipment onto his land.

Edward Altrichter has lived across the road from the disputed driveway since 1953. When asked about use of the driveway Altrichter replied that "anybody that wanted to drive in there drove in."

## ISSUE

Did the trial court err in finding that respondents' predecessors in title used the driveway exclusively, adversely and under claim of right, thus justifying the grant of an easement by prescription?

## ANALYSIS

The scope of our review in this case is limited. When the trial court sits without a jury its findings of fact will not be set aside unless clearly erroneous and we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01.

Easement by prescription and adverse possession are two similar legal theories. With both, a person, through his prolonged actions, gains an interest in property that he did not previously have. Through adverse possession, a person gains title to land. *See Romans v. Nadler,* 217 Minn. 174, 177, 14 N.W.2d 482, 485 (1944). Through a prescriptive easement, a person gains the right to use land for certain

purposes. *Id.* at 181–82, 14 N.W.2d at 486–87.

To gain an easement by prescription a person must, for fifteen years, use the land in a manner which is hostile, adverse, and under a claim of right, and in a manner that is actual, open, continuous and exclusive. *Burns v. Placheki,* 301 Minn. 445, 448, 223 N.W.2d 133, 135–36 (1974). Appellants concede that the actual, open and continuous use requirements have been met. Additionally no question arises concerning the fifteen year requirement. At issue is whether respondents and their predecessors in interest used the land in a manner which was adverse, under claim of right, and exclusive throughout the last fifteen years.

■ In order for a person to gain a prescriptive easement the land must be used exclusively. The exclusivity requirement for a prescriptive easement is not as strictly defined, however, as that of adverse possession. *Nordin v. Kuno,* 287 N.W.2d 923, 926 (Minn.1980). With adverse possession the person must take possession of the land as if it were his own with the intention of using it to the exclusion of others. *Thomas v. Mrkonich,* 247 Minn. 481, 484, 78 N.W.2d 386, 388 (1956). With prescriptive easements the person claiming the easement need not exclude use by the owner of the land or by the public. *Romans v. Nadler,* 217 Minn. 174, 182, 14 N.W.2d 482, 487 (1944) (quoting *Lustmann v. Lustmann,* 204 Minn. 228, 231, 283 N.W. 387, 388 (1939)). What is required is that the person's right to use the land must not depend on a similar right in others; it must be exclusive against the community at large. *Merrick v. Schleuder,* 179 Minn. 228, 232, 228 N.W. 755, 756 (1930).

■ Given our limited scope of review, we cannot say that use of the disputed driveway was not exclusive as that term applies to prescriptive easements. Although some witnesses testified that the driveway was once used heavily by the public, their testimony concerned use of the driveway prior to the past fifteen years. The testimony concerning the past fifteen years does not show the public used the driveway sufficiently to mandate that we now say respondents' right to use the land has depended on a right shared by the community at large. The trial court could have properly found that the public's use of the driveway during the past fifteen years was too sporadic to defeat respondents' claims that use of the driveway has been exclusive.

■ To establish an easement by prescription, respondents also needed to show that their use of the driveway was not based on the permission of the true owner. *See Hartman v. Blanding's Inc.,* 288 Minn. 415, 421, 181 N.W.2d 466, 469–70 (1970). The person seeking to obtain the prescriptive easement must show that his use of the land was under claim of right and adverse to the owner's interest. This will be presumed, however, where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred. *Hildebrandt v. Hagen,* 228 Minn. 353, 357, 38 N.W.2d 815, 818 (1949). In such a case, the burden of rebutting this presumption then shifts to the landowner to prove that the use was permissive. *Hartman v. Blanding's Inc.,* 288 Minn. 415, 421, 181 N.W.2d 466, 469 (1970).

Appellants do not contest that respondents presented sufficient facts to establish the presumption that the land was used under claim of right and adverse to appellants' interest. Appellants contend, however, that they rebutted this presumption. They point to the testimony of respondents' predecessor in interest, Oscar Rossum, who testified that he had no intention, during the years he used the driveway, to claim title to the land. Appellants contend that because Rossum had no intention to claim title to the land, the presumption of a claim of right is rebutted.

Appellants might well be correct if respondents were claiming title to the driveway by adverse possession, but respondents claim only a right to use the driveway, not title to it. Because a prescriptive easement does not lead to ownership of the land the person seeking the easement is not required to claim title to it. *Romans v. Nadler*, 217 Minn. at 181–82, 14 N.W.2d at 486–87. Appellants' evidence as to Rossum's lack of intent to claim title to the driveway does not rebut the presumption of a claim of right to use the driveway.

Appellants also argue that they rebutted the presumption that respondents' use was adverse. They point especially to the testimony of Walter Smith that respondents' predecessor in title, Oscar Rossum, received permission to use the driveway during a 1967 conversation with the owner at that time, Smith. The record, however, holds evidence contrary to the testimony of Smith. Specifically, Rossum testified that he did not remember having any conversation with Smith concerning the driveway and that he thought he would remember such a conversation had it in fact occurred. From this, the court apparently concluded that Rossum's use of the driveway was not based on the permission of the owner. We cannot say that the court clearly erred in finding that appellants did not rebut the presumption of adverse use.

### DECISION

Because the evidence supports a finding that respondents' use of appellants' driveway was exclusive, under claim of right, and adverse, we affirm.

Affirmed.