**Dean OLIVER, et al., Appellant,**

v.

**STATE of Minnesota, by its COMMISSIONER OF TRANSPORTATION, Respondent.**

No. A08–646.

Court of Appeals of Minnesota.

Feb. 17, 2009.

Zenas Baer, Zenas Baer and Associates, Hawley, MN, for appellants.

Lori Swanson, Attorney General, Erik M. Johnson, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; ROSS, Judge; and BJORKMAN, Judge.

## OPINION

ROSS, Judge.

This appeal arises from the district court's refusal to order the state to condemn a private property interest in rural Clay County after the state closed access to a privately owned roadway that had linked the claimants' parcel to Highway 10 since 1955. More precisely, Dean and Delores Oliver brought a mandamus action in the district court to compel the state to condemn their property interest in an easement over their neighbors' property that allowed the Olivers to access Highway 10. The district court granted summary judgment to the state. We reverse and remand because we hold that the disputed facts may support the Olivers' claim that they have a prescriptive easement and that the state's closure of the easement's access to Highway 10 constituted a taking. On remand, the district court should first address the unresolved issue of joinder of necessary parties.

## FACTS

The history regarding access to the Oliver property is not in dispute. Dean and Delores Oliver purchased a Clay County parcel north of Highway 10 in 1951, a portion of which included a gravel pit. Three years later, the Olivers contracted with the state to sell sand, gravel, clay, and other road-construction material from their gravel pit and granted the state an easement for a road within the parcel allowing the state to haul material from the pit to the parcel's southern boundary. They also conveyed to the state a 25–year right to enter and mine the material in exchange for payment. The state purchased easements from adjacent landowners to construct a "haul road" that ran along the eastern border of the Olivers' property, over these adjacent servient parcels, and southward linking to Highway 10. The state's closing of the link from this haul road to Highway 10 in 2005 triggered this dispute.

The Olivers' parcel does not abut Highway 10. The parcel's only access to Highway 10 has been by 250th Street, which abuts and runs along its western border, and the haul road just described, which abuts and runs along its eastern border. The servient estate owners retained fee

title and the state acquired only easements to use the haul road.

The state's easements for use of the haul road expired in 1980. The Olivers and their neighbors continued to use the road to access their properties from Highway 10, but the parties disagree regarding the nature and extent of its use. The Olivers used the road for commercial transportation. They continued to sell gravel after 1980, and purchasers transported gravel from the Olivers' gravel pit to Highway 10 using the haul road. But in 2005, the state closed the haul road's access to Highway 10, leaving the private road disconnected to any public thoroughfare. From the Olivers' perspective, it became a road to nowhere.

The state compensated a property owner to the Olivers' immediate east for a total taking because that property enjoyed an express easement to use the haul road and the property became landlocked by its closure. In contrast, the state did not compensate the Olivers, whose parcel is not landlocked; its access to a public road remains immediate by its abutment to 250th Street.

The Olivers brought a mandamus action in district court to compel the state to condemn their property. They argued that the closure constitutes a taking that requires compensation at least for their potential cost to construct a new internal roadway on their property to connect the parcel's gravel pit to its 250th-Street access point. Specifically, they claimed to have established a prescriptive easement over the haul road and that closure of its access to Highway 10 prevented reasonably convenient access to the parcel. The district court concluded that the Olivers did not prove a taking, and it entered summary judgment for the state. The Olivers appeal.

## ISSUES

I. Does the state's closure of the haul road's access to Highway 10 constitute a compensable taking based on the theory that the closing denied the Olivers reasonably convenient and suitable access to their parcel?

II. Does the state's closing of the haul road's access to Highway 10 constitute a taking based on the theory that the closing frustrated the Olivers' property interest in a prescriptive easement?

## ANALYSIS

The Olivers challenge the district court's summary judgment decision. Summary judgment is proper if there are no material fact disputes and one party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review de novo the district court's application of the law and the district court's conclusion that no genuine issues of fact remain for trial. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). We construe disputed evidence in the light most favorable to the Olivers as the nonmoving parties. *See Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (viewing the evidence in the light most favorable to the nonprevailing party on summary judgment).

■ Inverse condemnation actions seek to compel the state to compensate a landowner for its interference with a private property interest. *Johnson v. City of Minneapolis,* 667 N.W.2d 109, 111 n. 1 (Minn.2003). To prevail in their inverse-condemnation action, the Olivers must establish that the state interfered with ownership, possession, or enjoyment of a property right. *See Grossman Inv. v. State by Humphrey,* 571 N.W.2d 47, 50 (Minn.App. 1997), *review denied* (Minn. Jan. 28, 1998). The Olivers argue that disputed facts con-

strued in their favor establish that they have a prescriptive easement over the haul road and that the state's closure of access to Highway 10 constitutes a denial of suitable access to their parcel for which the state must compensate the Olivers. The Olivers argue alternatively that "if [they] have a prescriptive right to access [Highway] 10 across the gravel 'haul road' . . ., [they] have a right to claim damages irrespective of having an alternative access to [Highway] 10." The first argument fails but the second has merit.

### I

■ The Olivers' primary theory offered to support their takings claim is not convincing. The state must compensate landowners whose private property is taken for public use. Minn. Const. art. I, § 13; *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn.1978). The Olivers argue chiefly that the state has taken their parcel's access to Highway 10. Although the right of access is itself "in the nature of an easement," *Grossman*, 571 N.W.2d at 50, it is a more limited property interest than an easement to use the road itself. The Olivers' primary argument focuses substantially on a specific property right that generally attaches to parcels that abut a public road.

■ Owners of property abutting a public roadway have a right to "reasonably convenient and suitable access" to the roadway. *Grossman*, 571 N.W.2d at 50 (quotation omitted). Owners of property that does not abut the roadway have no claim to damages merely because the roadway design leaves them with an inconvenient or circuitous transportation route. *Hendrickson v. State*, 267 Minn. 436, 446–47, 127 N.W.2d 165, 173 (1964). The Olivers recognize that their parcel does not abut Highway 10, but they still attempt to fit this case into the reasonable-access theory of taking. To do so, they maintain that because their alleged prescriptive easement reached Highway 10, the linking easement caused their parcel itself to "abut" Highway 10. We need not consider the merit to this contention; because the Olivers' parcel continues to have reasonably suitable and convenient access to Highway 10, they cannot establish a taking on this theory.

■ Whether reasonably convenient and suitable access exists is "a question of fact to be determined in light of the circumstances peculiar to each case." *Johnson*, 263 N.W.2d at 607. Although the supreme court has characterized the existence of reasonably convenient access as a factual question, this court has stated that in inverse condemnation actions, whether a change in access constitutes a taking is determined as a matter of law. *Chenoweth v. City of New Brighton*, 655 N.W.2d 821, 824 (Minn.App.2003).

The district court concluded that the Olivers continue to have reasonably convenient and suitable access to Highway 10 by 250th Street. The Olivers argue that access by 250th Street is not suitable for the use they formerly made of the haul road, which was for their vendees to transport gravel from the property to Highway 10. They do not claim that 250th Street is unsuitable to transport gravel from their property to Highway 10, and no evidence suggests that gravel-hauling trucks cannot just as easily reach the Olivers' property from Highway 10 using 250th Street as they could using the haul road. Rather, the Olivers contend that if haulers must use 250th Street for gravel-hauling, either their house would suffer damage from large hauling vehicles passing closely on the existing driveway, or they must construct a new interior private road at an estimated cost of more than $150,000. We therefore must decide if the reasonable-access theory of takings requires courts to analyze whether convenient and suitable

access exists between the public roadway and the private parcel, or between some commercially useful location within the property and the point on the perimeter connecting the property to the public roadway.

■ Whether there is reasonably convenient and suitable access to a parcel does not depend on whether the landowner prefers a different point of access. *Grossman*, 571 N.W.2d at 51. It is generally true that we consider the commercial use the complaining property owner wishes to make of the parcel when evaluating whether reasonably convenient and suitable access exists. *See, e.g., Johnson*, 263 N.W.2d at 607. (considering the commercial use of a bus company); *County of Anoka v. Esmailzadeh*, 498 N.W.2d 58, 61–62 (Minn.App.1993) (holding the district court erred when it did not consider the disruption of business caused by a roadway modification that may have interfered with large vehicles accessing the property), *review denied* (Minn. May 28, 1993). But these cases turn on the convenience and suitability of ingress and egress related to public roadway alterations outside a property's perimeter, not on the property owner's inconvenience or internal improvement costs to facilitate internal access to the perimeter. *See, e.g., Dale Properties, LLC v. State*, 638 N.W.2d 763, 766 (Minn.2002) (access to roadway in one direction); *County of Anoka v. Blaine Bldg. Corp.*, 566 N.W.2d 331, 334 (Minn.1997) (creation of median); *Hendrickson*, 267 Minn. at 437, 127 N.W.2d at 167 (creation of frontage road); *C and R Stacy, LLC v. County of Chisago*, 742 N.W.2d 447, 458 (Minn. App.2007) (creation of four-block detour); *Grossman*, 571 N.W.2d at 51 (closure of a road); *Kick's Liquor Store, Inc. v. City of Minneapolis*, 587 N.W.2d 57, 59 (Minn. App.1998) (creation of a cul-de-sac).

■ Caselaw in Minnesota and elsewhere consistently describes the right of access as a right of ingress and egress with respect to a roadway. *Hendrickson*, 267 Minn. at 445–46, 127 N.W.2d at 172–73; *see also, e.g., State ex. rel. Merritt v. Linzell*, 163 Ohio St. 97, 126 N.E.2d 53, 56 (1955), *Douglas County v. Briggs*, 34 Or. App. 409, 578 P.2d 1261, 1265 (1978), *Blevins v. Johnson County*, 746 S.W.2d 678, 681–82 (Tenn.1988). The convenience and suitability of ingress and egress pertains to the path between the abutting road and the parcel's perimeter, not to a preferred point on the interior of the property. *See Hendrickson*, 267 Minn. at 445, 127 N.W.2d at 172 (discussing the remoteness of a proposed interchange allowing access to an abutting road that formerly connected to landowner's property). We hold that the issue in an access-taking case is whether there is a reasonably convenient and suitable point of access connecting the perimeter of landowners' property to a public roadway.

Resolving this narrow question, we conclude that there are no material issues of fact and that the district court was correct to hold as a matter of law that the state's action did not constitute a taking under the access-taking theory. The Olivers' only claim to inconvenience rests on their parcel's lack of internal commercially oriented roadways connecting their gravel pit to the access point on 250th Street. Having to use 250th Street rather than the haul road to enter the Olivers' property does not constitute a substantial inconvenience. Undisputed facts establish that gravel trucks can enter and exit the Olivers' property and reach Highway 10 by 250th Street with no difficulty relative to the public street. The state has therefore not disturbed the Olivers' property interest under their access-taking theory.

## II

The Olivers' second, less developed argument is that the state's closure of their

alleged prescriptive easement to use the haul road to access Highway 10 constitutes a taking regardless of their alternative access to Highway 10 by 250th Street. In other words, they maintain that they have a property interest in a prescriptive easement that the state destroyed by closing access to the highway. The district court determined that the Olivers presented insufficient evidence to prove that they obtained a prescriptive easement. The state also had countered alternatively that the district court could not determine that the Olivers had a prescriptive easement because they failed to join the servient-estate fee holders, whom the state asserts are indispensable parties.

### Interference With Prescriptive Easement as a Taking

█ The Olivers' argument that the state's interference with their alleged prescriptive easement is a compensable taking rests on well-settled precedent. When the state destroys or impairs an easement, it takes the easement owner's property right protected by the Minnesota Constitution, and it must compensate the owner. *Burger v. City of St. Paul*, 241 Minn. 285, 291–94, 64 N.W.2d 73, 77–78 (1954). To prevail on this theory, the Olivers must first establish that they have a prescriptive easement over the haul road.

### Disputed Facts Bearing on Prescriptive Easement

█ The district court never reached the question of whether the state's closure of the haul road's access to Highway 10 constituted a taking because it held that the Olivers could not prove that they ever obtained a prescriptive easement to use the haul road. To establish a prescriptive easement, a party must prove by clear and convincing evidence that their use of someone else's land was hostile, actual, open, continuous, and exclusive for over 15 years. *Rogers v. Moore*, 603 N.W.2d 650,

657 (Minn.1999). The district court held that the undisputed facts demonstrate that the Olivers' use of the haul road was neither exclusive nor hostile. It therefore granted summary judgment to the state without addressing the other elements of prescriptive easement. The Olivers challenge the district court's exclusivity and hostility determinations.

█ Exclusivity, for purposes of obtaining a prescriptive easement, does not require a claimant to have excluded use by others. *Merrick v. Schleuder*, 179 Minn. 228, 232, 228 N.W. 755, 756 (1930); *Wheeler v. Newman*, 394 N.W.2d 620, 623 (Minn. App.1986). Instead, a use is "exclusive" when it does not "depend on a similar right in others," and is "exclusive against the community at large." *Wheeler*, 394 N.W.2d at 623.

█ The district court concluded that after the state discontinued use in 1980, "[t]he road was clearly used by the community at large." But "the person claiming the [prescriptive] easement need not exclude use by … the public." *Id.* Additionally, the facts that are undisputed in this case prove merely that the road was used by the five owners who were either fee holders to the servient estate or who owned those parcels that abutted the easement, not by the general public. As the district court observed, Laurence Aakre used the road because part of it passed over his property; Eugene Jetvig and Tim Fox operated farming machines on the haul road from Highway 10 to their respective properties; and the Olivers and Jose Santoyo used the road to transport gravel from their respective gravel pits. Aakre's relatives also used the road to access the Aakre property to hunt, but this permissive use of Aakre's own fee does nothing to impact the Olivers' claim to an easement.

The record does not support the district court's conclusion that the broader community used the haul road after the state relinquished its interest in 1980. It arguably supports the Olivers' argument that they used it "exclusively," meaning only that their use depended on no other person's right to use the road.

The district court distinguished *Wheeler*, where we affirmed the district court's finding that use of a disputed driveway was exclusive despite sporadic use by the public. *Id.* at 624. The district court here reasoned that the Olivers' neighbors used the road for the same period as the Olivers and "in the same manner." We do not see *Wheeler* as distinguishable on that basis. The question of exclusivity concerns others' use only as it assists to determine whether the basis of the claimants' rights to a prescriptive easement depends on the rights of other users. We hold that material fact disputes preclude a determination that the Olivers cannot establish exclusivity as that term is used in the context of the prescriptive-easement analysis.

The Olivers also contest the district court's conclusion that the undisputed facts prove that they cannot satisfy the hostility element to establish a prescriptive easement. A use is hostile in prescriptive easement cases if it is nonpermissive. *See Boldt v. Roth,* 618 N.W.2d 393, 398 (Minn.2000) (contrasting hostile and permissive); *Burns v. Plachecki,* 301 Minn. 445, 449–50, 223 N.W.2d 133, 136 (1974) (concluding a use that may have been permissive was not proven to be hostile); *Lustmann v. Lustmann,* 204 Minn. 228, 231, 283 N.W. 387, 389 (1939) (contrasting hostile and permissive). Hostility is presumed when the other elements of a prescriptive easement are established. *Boldt,* 618 N.W.2d at 396. "[O]nce a claimant to a prescriptive easement has established actual, open, continuous, and exclusive use for the required length of time, the burden of proof shifts to the owner of the servient estate to prove permission." *Id.* But where, as here, hostility is not the subject of a presumption, it is a question of fact. *Burns,* 301 Minn. at 449, 223 N.W.2d at 136.

The district court appears to have weighed facts against the Olivers' claim to a prescriptive easement to conclude that the Olivers are unable to prove hostility. For example, the district court stated, "[The Olivers'] claim that some of the people who contracted with them [performed maintenance on the haul road], but the evidence tends to show that Santoyo performed most of the maintenance on the road." Whether the Olivers directly or indirectly performed work to maintain the road, their maintenance efforts arguably may demonstrate their assertion of a property interest in the haul road independent of any other interest.

Other disputed evidence could support a finding of hostility. The evidence establishes that Steve Aakre wrote to the Department of Transportation in June 1981, to complain that "gravel trucks are continuing to use the road" on his property despite the fact that "[t]he easement expired Jan[uary] 1, 1980." In that same letter, Aakre threatened to close the road if the state chose not to renew its easement. Although the state did not renew its easement, the Olivers continued to use the road for a period that they claim would satisfy the 15–year prescriptive period. As the district court points out, the Olivers "continued to use the road in the same manner as they had used [it]" before the state's easement expired. Furthermore, Laurence Aakre eventually conveyed an express easement to Santoyo to use the haul road to haul gravel. This evidence combines to suggest that Aakre would allow gravel haulers to traverse his property on the haul road *only* if they have an

easement in the road. It is true that one may presume that Aakre permitted the Olivers to carry gravel from their gravel pit using the haul road while the state maintained an express easement to haul gravel from the Olivers' property, but that presumption logically ended as soon as the state's easement ended and Aakre complained about gravel haulers continuing to cross his property. We hold that there are fact disputes regarding the issue of hostility.

■■■ We reverse the district court's summary judgment decision that denied the existence of a prescriptive easement as a matter of law. The Olivers argue that the taking of their easement would entitle them to their "cost to cure," in this case, the cost of building a new road that reaches their gravel pit. But "[i]n a partial taking, whether a fee or an easement is acquired, the rule of damages is identical." *State by Lord v. North Star Concrete Co.*, 265 Minn. 483, 488, 122 N.W.2d 118, 122 (1963). The measure of damages is the difference in market value of the property before and after the taking. *Id.* If the Olivers can establish that they obtained a prescriptive easement, and that easement was taken by the state, they would be entitled to recover the loss in value of the fee benefited by the easement, if damages can be proven.

### Joinder of Indispensible Parties

■■■ The state argues that the Olivers cannot establish a prescriptive easement without joining the fee owners of the servient estates in this litigation. Although the state raised this argument in the district court, the district court did not address the issue because it concluded on other grounds that the Olivers could not establish a prescriptive easement. The court of appeals does not generally address issues raised but not decided first by the district court. *See Wood v. Diamonds*

*Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 709 (Minn.App.2002) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988)). Because we reverse the district court's determination that the Olivers cannot establish an easement, the district court will have an opportunity on remand to address the unresolved issue of indispensable parties.

### DECISION

The district court properly concluded as a matter of law that the Olivers could not prove that their parcel was deprived of reasonably convenient and suitable access to Highway 10. Fact disputes prevent summary judgment on the Olivers' claim that the state has taken their alleged prescriptive easement, and the issue of joinder of indispensable parties must be resolved in the district court.

**Reversed and remanded.**