*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0154**

Robert W. Starbeck, individually, and As Trustee of the
Arthur C. Starbeck Trust under agreement Dated August 21, 2000,
Appellant,

vs.

Mary Gibson, et al.,
Respondents.

**Filed October 27, 2025
Affirmed
Bratvold, Judge**

Chippewa County District Court
File No. 12-CV-22-376

John E. Mack, New London Law, P.A., New London, Minnesota (for appellant)

J. Richard Stermer, Krystal M. Lynne, Stermer & Sellner, Chtd., Montevideo, Minnesota (for respondents)

Considered and decided by Bjorkman, Presiding Judge; Bratvold, Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

This case involves neighboring landowners and returns to our court for a second time. In the first appeal, this court reversed summary judgment in part and remanded for a trial. Following a bench trial and posttrial motions, appellant challenges the final judgment denying his prescriptive-easement claim and entering a money judgment for respondents

based on their counterclaims for tortious interference with contract and slander of title. Appellant argues that the district court erred in two ways: (1) the record evidence established appellant's prescriptive easement for use of the disputed property, and (2) the record evidence is not sufficient to sustain respondents' tortious-interference-with-contract claim—and even if it were, the law does not support an award of attorney fees as damages. Appellant does not challenge the district court's judgment for respondents on their slander-of-title claim. Respondents disagree and, in their brief to this court, request appellate attorney fees and costs as a sanction.

We conclude that the record evidence supports the district court's findings related to appellant's prescriptive-easement claim and respondents' tortious-interference claim. We need not determine whether the law supports an award of attorney fees as damages for tortious interference with contract, however, because any error was harmless. Appellant fails to challenge an independent and sufficient basis for the damages awarded—the judgment for respondents on their slander-of-title claim. We deny respondents' request for appellate attorney fees and costs. Thus, we affirm.

**FACTS**

Appellant Robert W. Starbeck is the trustee of the Arthur C. Starbeck Trust,[1] which, at the time relevant to this appeal, owned a 40-acre parcel in Chippewa County near

---

[1] Arthur Starbeck is Robert Starbeck's father, who passed away in 2012. Our opinion refers to Arthur Starbeck as "Arthur" and Robert Starbeck as "Starbeck."

Arthur purchased the Starbeck property in 1974, the same year that respondents bought the adjacent property. The Starbeck property was transferred to the Paradise Acres Revocable Trust in 2023.

Montevideo (the Starbeck property). The Starbeck property's southern border abuts a second 40-acre parcel owned by respondents Dennis and Mary Gibson and Keith and Vicki Poier (the Gibson/Poier property).[2] The following summarizes the district court's written findings entered after the bench trial, the relevant evidence received at trial, and the procedural history.

In early 2022, respondents decided to sell the Gibson/Poier property to Chippewa County and to dedicate the land as a public park. In April 2022, Starbeck sent Dennis Gibson and Vicki Poier a handwritten letter that stated, "If you are determined to dispose of the [Gibson/Poier property], I would pay $10.00 over the counties offer. My goal is to preserve the beauty of this area what you are doing will turn it into a mess again." In June 2022, respondents rejected Starbeck's offer and entered into a purchase agreement with the county. The closing date was scheduled for July 11, 2022.

In July 2022, Starbeck, individually and as trustee, sued respondents, asserting that the trust had acquired two portions of the Gibson/Poier property by adverse possession: the "encroached farm property" and the "campground property." In his complaint, Starbeck alleged, in relevant part, that he had constructed a campground on the Gibson/Poier property, maintained the campground property since 2000, and used it "for his recreational and hunting purposes." Alternatively, Starbeck claimed the trust had a prescriptive easement for use of the campground property. The complaint attached an image of the

---

[2] Dennis Gibson and Vicki Poier are siblings.

Starbeck property, the Gibson/Poier property, and the disputed areas, which we reference for illustrative purposes.



The day after Starbeck filed the complaint, he recorded a notice of lis pendens against the Gibson/Poier property.[3] Respondents did not complete the sale of the Gibson/Poier property.

Respondents' answer contested Starbeck's claims and asserted counterclaims for slander of title and tortious interference with contract. Respondents alleged that Starbeck was aware of their purchase agreement with the county and that the notice of lis pendens

---

[3] A notice of lis pendens is filed with the county recorder and gives notice of an "action[] in which the title to, or any interest in or lien upon, real property is involved or affected, or is brought in question by either party." Minn. Stat. § 557.02 (2024).

"muddied the title of the [Gibson/Poier property] and resulted in damages to [respondents]."

Respondents moved for summary judgment on Starbeck's claims. Starbeck opposed the motion and moved to dismiss respondents' counterclaims. The district court granted summary judgment in favor of respondents on Starbeck's claims and denied Starbeck's motion to dismiss the counterclaims. The district court entered partial final judgment based on its summary-judgment order under Minnesota Rule of Civil Procedure 54.02.

Starbeck appealed. This court affirmed in part, concluding that "the district court did not err in granting summary judgment in favor of [respondents] on the adverse-possession claim for the encroached farm property." *Starbeck v. Gibson*, 2 N.W.3d 535, 540-42 (Minn. App. 2024), *rev. denied* (Minn. Apr. 24, 2024).[4] This court also reversed in part and remanded on the prescriptive-easement claim for the campground property. *Id.* at 542-44.

On remand and after a bench trial, the district court filed written findings of fact, conclusions of law, and an order for judgment. First, the district court rejected Starbeck's prescriptive-easement claim, finding that his use of the campground property was not exclusive, continuous, or hostile. Second, the district court rejected respondents' slander-of-title counterclaim, finding that Starbeck's "statement of the purpose of the

---

[4] While Starbeck's complaint included adverse-possession claims for both the encroached farm property and campground property, this court determined that, on appeal, Starbeck's adverse-possession arguments related "only to the encroached farm property, not the campground property." *Id.* at 540 n.4. This court also determined that Starbeck's "only argument relating to the campground property" was that the district court erred by "dismissing his claim for a prescriptive easement for use of that property." *Id.*

proceedings" that was included in the notice of lis pendens "was accurate." Third, the district court determined that respondents were entitled to judgment on their tortious-interference-with-contract claim, making factual findings on all five elements. Fourth, the district court awarded respondents $36,000 in attorney fees as damages, as well as $7,920 in lost interest for the delayed sale of the Gibson/Poier property.

Starbeck moved for amended findings of fact and, alternatively, a new trial. Respondents opposed Starbeck's motion and moved for amended findings of fact and conclusions of law, arguing that Starbeck was liable for slander of title based on the evidence received at trial.

After a hearing, the district court denied Starbeck's posttrial motions and granted respondents' motion by amending its factual findings. Based on its amended findings, the district court concluded that respondents were entitled to judgment on their slander-of-title claim and awarded respondents damages for attorney fees and lost interest, stating that the damages were "concurrent with the judgment for" the tortious-interference-with-contract claim. The district court directed entry of judgment for respondents in the amount of $43,920.

Starbeck appeals.

## DECISION

**I.      The district court did not clearly err in its factual findings rejecting Starbeck's prescriptive-easement claim for use of the campground property.**

Starbeck argues that the district court erred by determining that the record evidence did not establish his prescriptive easement for use of the campground property. Starbeck

challenges the district court's factual findings on each of the five elements of a prescriptive easement.

Whether evidence establishes a prescriptive easement is a question of fact that appellate courts review for clear error. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). In doing so, appellate courts "view the record in the light most favorable to the judgment of the district court" and only reverse findings that are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted); *see* Minn. R. Civ. P. 52.01 (stating that, on review, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").

"A prescriptive easement is based on prior continuous use and grants a right to use the property of another." *Rogers*, 603 N.W.2d at 656. A claimant "must prove by clear and convincing evidence" that their use of someone else's land over the preceding 15 years was (1) exclusive, (2) hostile, (3) actual, (4) open, and (5) continuous. *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn. 2000). Each of the five elements is "equally necessary," and the failure to establish all elements is fatal to a prescriptive-easement claim. *Meyers v. Meyers*, 368 N.W.2d 391, 393 (Minn. App. 1985), *rev. denied* (Minn. July 17, 1985).

The district court concluded that Starbeck's claim "fails" under the exclusive, hostile, and continuous elements. Beginning with the first element, caselaw instructs that the "exclusivity requirement" does not require a claimant to "exclude use by the owner of the land or by the public." *Wheeler v. Newman*, 394 N.W.2d 620, 623 (Minn. App. 1986). Rather, a party's use is "exclusive" when it does not "depend on a similar right in others" and is "exclusive against the community at large." *Id.*

The district court found that Starbeck used the campground property for hunting and recreation but did so along with other members of the public. The district court found that a local high school used the campground property for recreational activities over "many years" and that "Starbeck did not exclude members of the public from the property," including a church group. The district court concluded that Starbeck failed to establish his exclusive use of the campground property because "[t]he community at large used the Gibson/Poier Property just as Robert Starbeck and his family did."

Starbeck argues that his use of the campground property was "exclusive against the public at large" because he exercised his "right to exclude the public" by chasing "drunk and rowdy" teenagers off the property. Starbeck maintains that "a claimant does not lose his claim of exclusivity by tolerating others' use of his easement during the 15-year look-back period." Respondents counter that Starbeck's use of the campground property "was virtually indistinguishable from the public's use."

Ample evidence supports the district court's finding that the local community used the campground property for the same purposes as Starbeck did—for hunting and other recreation.[5] Starbeck's son testified that, "[i]n the past," the campground property would

---

[5] Other evidence related to use of the Gibson/Poier property generally. For example, Keith Poier testified that he gave "permission to use [his] subject 40-acre property" to "the public" and confirmed that "church groups," "school groups," and his "friends and family" used the Gibson/Poier property. Dennis Gibson agreed that "members of the public and the churches" used the Gibson/Poier property and testified that respondents "gave permission to everyone" to use it. He also testified that he gave people permission to hunt on the Gibson/Poier property and let them know that Starbeck also had permission to hunt there. And in a deposition that was admitted at trial, Vicki Poier testified that friends, family, and church members used the Gibson/Poier property for recreational activities, including

have to be cleaned "multiple times a summer" to "fill up two or three fifty-five gallon barrels or a trailer just full of things" left over after the public used the property. Starbeck's son also testified that he could hear "[y]ounger teenagers" or "local kids" at the campground property and that "lots of people used the [campground] property" until "probably the mid-2000s." And a science teacher testified that the high school used the campground property as an "outdoor classroom," creating trails and holding educational activities on the property from the "mid-90's" to around 2003. The teacher also testified that the campground property was used by a local family for hunting and that "there was a lot of kids who used that [property] for hunting geese."

Starbeck's testimony confirmed that the high school used the campground property as an outdoor classroom and that teenagers were "down there nights and weekends partying." At trial and in a deposition that was admitted into evidence, Starbeck testified that Vicki Poier's church group would use the campground property for "church socials" and "duck hunting."

The evidence, when viewed in a light favorable to the district court's judgment, shows that the public used the campground property for hunting and other recreational activities during the 15-year period before Starbeck filed suit in 2022.[6] Thus, the record

---

camping, swimming, and fishing. When viewed favorably to the judgment, this general evidence also supports the district court's findings.

[6] Respondents argue that Starbeck "admitted that he did not attempt to assert control over the land or exclude the public until 2009" and contend that, based on Starbeck's testimony, "the prescriptive period would not have begun until 2009, too late to satisfy the [15-year requirement] for a prescriptive easement." This argument has some merit. Even if

supports the district court's factual findings and its findings support the determination that Starbeck's use was not "exclusive against the community at large." *Wheeler*, 394 N.W.2d at 623. Because we conclude that the district court did not error in determining that Starbeck's claim failed on the exclusivity element, we need not address the hostility and continuity elements.[7] *See Meyers*, 368 N.W.2d at 393.

## II. The district court did not clearly err in its factual findings supporting its determination that Starbeck is liable for tortious interference with contract, and any error in awarding attorney fees as damages was harmless.

Starbeck contends that the district court clearly erred in its factual findings on respondents' claim for tortious interference with contract because the record does not support the fourth and fifth elements of respondents' claim. "A cause of action for tortious

---

Starbeck's exclusive use began in 2009, he nonetheless failed to prove 15 years of exclusive use before he filed suit in 2022.

The record included evidence that public use of the campground changed over time. In his deposition, Starbeck testified that he brought public use "to a screaming halt" in the fall of 2009. At trial, Starbeck agreed that, "sometime in 2008, 2009," he installed a chain gate across a road; Starbeck's son clarified that this gate controlled "the family haul roads going down to" the campground property. But Starbeck's son and Keith Poier also testified that there were other roads to access the property. And Starbeck testified that, after suing in 2022, he stopped "a couple of pickups" that were going to the campground property for duck hunting. The district court did not make a specific finding about Starbeck's efforts to exclude the public in 2009 or later, although it found, as mentioned above, that "Starbeck did not exclude members of the public from the property." Because the district court found that Starbeck otherwise failed to prove exclusive use, we need not consider whether, as of 2009, Starbeck tried to exclude the public.

[7] Respondents alternatively argue, as they did in their written closing, that there was no prescriptive easement because the campground property was the subject of a common-law public-use dedication under Minn. Stat. § 541.01 (2024). The district court did not address this argument. Because we affirm the district court's findings on the prescriptive-easement claim based on the record evidence, we need not consider respondents' alternative argument about public-use dedication.

interference with a contractual relationship requires five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (quotation omitted). We consider Starbeck's arguments in turn.

### A. The record evidence supports the district court's factual findings related to respondents' tortious-interference-with-contract claim.

A defendant is justified in challenged conduct interfering with a contract when he "asserts in good faith a legally protected interest of his own believing that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) (quotation omitted). Generally, whether interference is justified is a question of fact, "and the test is what is reasonable conduct under the circumstances." *Id*.

The district court found that Starbeck "knew of the contract" between respondents and the county to sell the Gibson/Poier property "and initiated litigation to stop the sale." The district court found, among other things, that Starbeck asserted a prescriptive easement, "even though he knew his use of the [campground] property was permissive and nonexclusive." The district court found that the "lawsuit and notice of lis pendens blocked the sale to the county" and that Starbeck "believed" that if he blocked the sale to the county, "he could force a sale of the property to himself." Based on these findings, the district court concluded that Starbeck did not have legal justification for interfering in the purchase agreement between respondents and the county.

11

On appeal, Starbeck's primary argument is that he was justified in blocking the sale of the Gibson/Poier property to the county because he "believed, on good grounds, that [respondents] did not own the property." Starbeck points to the district court's finding in a footnote that "Starbeck and two of his witnesses were under the original belief that the Gibson/Poier Property was owned by the school because of their use of the property." [8]

Starbeck's argument is not persuasive. First, he takes the district court's footnote out of context. The district court's footnote was referring to the time period between 1972—when respondents purchased the Gibson/Poier property—and the early 2000s—when the local high school "used the property as an outdoor classroom." The relevant time period for respondents' tortious-interference-with-contract claim is 2022, when respondents and the county entered into a purchase agreement. Second, for the relevant time period, the evidence supports the district court's finding that Starbeck interfered with

---

[8] Starbeck also appears to challenge the district court's determination that his adverse-possession claim was not a legal justification for interfering with the purchase agreement between respondents and the county. The district court found that Starbeck "knew at the outset that he did not pay property taxes, an essential element to the claim" for adverse possession. Based on this finding, the district court concluded that Starbeck did not assert his adverse-possession claim in good faith.

At trial, Starbeck testified and confirmed that he "had not paid property taxes for any portion of the [Gibson/Poier] property." Minnesota law establishes that a "claim to any portion of a separately assessed parcel requires tax payment." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 552 (Minn. 2020) (emphasis omitted); *see also* Minn. Stat. § 541.02 (2024) (stating that "the party claiming title by adverse possession or the party's ancestor, predecessor, or grantor, or all of them together, shall have paid taxes on the real estate in question at least five consecutive years of the time during which the party claims these lands to have been occupied adversely"). Because the record evidence supports the district court's finding that Starbeck knew he did not pay property taxes and this failure defeats an adverse-possession claim as a matter of law, we conclude that the district court did not clearly err in determining that Starbeck's adverse-possession claim was not legal justification for his challenged conduct.

the purchase agreement so "he could force a sale of the property to himself." Thus, the district court did not clearly err in its factual findings or in its conclusion that Starbeck lacked legal justification for his lawsuit and the notice of lis pendens to defeat the purchase agreement.

**B.      Even assuming the law does not support a damages award of attorney fees for tortious interference with contract, the error was harmless.**

Starbeck also argues that the district court erred by awarding respondents attorney fees as damages for tortious interference with contract. In his opening brief, Starbeck appears to assume that the attorney fees were awarded to sanction him for bad faith in bringing his suit. In his reply brief, Starbeck emphasizes this assumption, urging that the requirements of Minn. Stat. § 549.21 (2024) and Minn. R. of Civ. P. 11 were not met.

We reject Starbeck's challenge to the damages award on two grounds. First, the district court did not sanction Starbeck under section 549.21 or rule 11—there is no language to that effect in the district court's orders or memoranda. Second, the district court entered a $43,920 judgment against Starbeck and in favor of respondents as damages for two tort claims—tortious interference with contract and slander of title. And the district court directed that the damages award was concurrent.

Even if we were to assume, as Starbeck argues, that existing law does not support a damages award of attorney fees for tortious interference with contract, we would conclude that any error was harmless. Slander of title is an independent and alternative claim that supports the damages award. *See Hunter v. Anchor Bank, N.A.*, 842 N.W.2d 10, 17 (Minn. App. 2013) (affirming grant of summary judgment where the district court provided two

independent and sufficient grounds for the grant and appellant did not challenge one of the grounds), *rev. denied* (Minn. Mar. 18, 2014).

On appeal, Starbeck does not challenge respondents' judgment on their slander-of-title claim. Any issue not raised in an appellant's brief is generally forfeited. *See Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010). Also, Minnesota law has recognized that attorney fees and costs are special damages recoverable for slander of title. *Laymon v. Minn. Premier Props., LLC*, 903 N.W.2d 6, 18 (Minn. App. 2017) (quoting *Paidar v. Hughes*, 615 N.W.2d 276, 277 (Minn. 2000)), *aff'd*, 913 N.W.2d 449 (Minn. 2018).

Thus, because the judgment for respondents on their slander-of-title counterclaim is an independent and sufficient basis to sustain the district court's damages award, the district court did not err in awarding attorney fees as damages.

## III. We deny respondents' request for sanctions on appeal.

On appeal, respondents request that "this Court not only affirm the judgment below but also award additional attorney fees and costs incurred on appeal as a sanction for this frivolous appeal." This court may award attorney fees on appeal as a sanction. *See* Minn. R. Civ. App. P. 139.05 1998 comm. cmt. Because respondents' request is made in a brief and not by motion, it fails to follow applicable rules providing that a "party seeking attorneys' fees on appeal shall submit such a request by motion under Rule 127." Minn. R. Civ. App. P. 139.05, subd. 1; *see also* Minn. Stat. § 645.44, subd. 16 (2024) (providing that "shall" is mandatory); *Provost v. Lundmark*, 15 N.W.3d 664, 672 (Minn. App. 2024) (applying the statutory definition of "shall" to rule 139.05, subdivision 1). Thus, as we have

in other appeals, we conclude that respondents' request for appellate attorney fees is not properly before us, and we deny it. *See Provost*, 15 N.W.3d at 672 (declining to reach a party's request for appellate attorney fees because they did not follow "the procedure established by the appellate rules").

**Affirmed.**